Oregon Mesabi Corporation v. Commissioner.
Oregon Mesabi Corp. v. Commissioner
Docket Nos. 101671, 107140, 111822.
United States Tax Court
1943 Tax Ct. Memo LEXIS 193; 2 T.C.M. (CCH) 475; T.C.M. (RIA) 43356; July 19, 1943
*193 Lowell P. Mickelwait, Esq., 1006 Hoge Bldg., Seattle, Wash. and J. Paul Coie, Esq., for the petitioner. B. H. Neblitt, Esq., and J. B. Harlacker, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: Respondent determined deficiencies in income tax and personal holding company surtax for the years 1936 to 1939, inclusive, as follows: Personal
Holding
Docket
Income
Company
No.
Year
Tax
Surtax
101671
1936
$ 9,148.47
107140
1937
14,945.56
$18,592.95
107140
1938
188.40
111822
1939
916.79
3,436.38
At the hearing, respondent filed amended answers in each proceeding, asserting that the deficiencies for each year should be increased to the following amounts: Personal
Holding
Docket
Income
Company
No.
Year
Tax
Surtax
101671
1936
$10,969.12
107140
1937
17,659.43
$27,331.24
107140
1938
239.33
111822
1939
1,691.15
3,998.89 Respondent claims the increased deficiencies on the ground that he had allowed petitioner excessive deductions for depletion on timber cut and removed during the years 1936 to 1939, inclusive. The questions presented are: 1. Whether petitioner is entitled *194 to deductions for losses resulting from damage to its timber by insects and fungi, in each of the years 1936 to 1939, inclusive, and, if so, the amount of the loss in each year. 2. Whether petitioner is entitled to deductions for depletion on timber cut and removed from its lands in each of the years 1936 to 1939, inclusive, and, if so, the amount of the deduction for depletion in each year. 3. Whether petitioner is entitled to a deduction for losses resulting from the alleged abandonment of certain lands in the year 1939, and, if so, whether such loss is a capital loss limited to $2,000 pursuant to the provisions of section 117(d) (1) of the Internal Revenue Code. Some of the facts have been stipulated. Petitioner filed its returns for the taxable years with the collector for the District of Washington. Findings of Fact Petitioner is a Delaware corporation with its principal office at Seattle, Washington. It keeps its books and files its returns on the cash receipts and disbursements basis. On May 26, 1932, petitioner acquired 3500.41 acres of land and timber thereon in Tillamook County, Oregon. At the date of acquisition, this land contained 225,830 million feet of Douglas *195 fir, 17,390 million feet of hemlock, and 197 million feet of cedar. The adjusted basis to petitioner of these properties was $316,602.14, of which $304.141.42 is applicable to the Douglas fir, $8,695 to the hemlock, $265.31 to the cedar, and $3,500.41 to the land. In August 1933, the Tillamook fire swept over 400 square miles of the region and killed more than ten billion feet of timber. It was primarily a crown fire, which flashed quickly through the tree tops, consuming foliage, twigs and small branches, charring the bark, and killing the trees. The fire itself did not destroy the trees as sound timber. After the trees were killed, the sapwood immediately began to stain. The trees then became vulnerable to insects and fungi which quickly attack dead timber. The resulting damage goes on increasingly for many years. In each of the years 1936 to 1939, inclusive, insects and fungi destroyed a volume of petitioner's sound fire-killed timber which had an adjusted basis immediately preceding the fire, as follows: Adjusted
Volume
basis of
of timber
timber
Year
destroyed
destroyed
1936
9 percent
$27,372.73
1937
11 percent
33,455.56
1938
6 percent
18,248.48
1939
8 percent
24,331.31
*196 The footage of fire-killed timber cut and removed from petitioner's land from the date of the fire to the end of the year 1939 was 28,524,653 feet. Petitioner in its tax return for the calendar year 1933, reported a net loss of $4,321.22 with no deductions claimed either for timber depletion or casualty loss occasioned by the fire in August 1933. Petitioner in its 1939 return claimed a loss of $8,548.50 due to abandonment and transfer of title by quitclaim deed of two tracts of land and timber in Tillamook County, Oregon, and foreclosure of a tract of land in Lincoln County, Oregon, as follows: -Loss Claimed-
Group
Acres
Description
Timber
Land
1
1,660.41
Lands and timber quitclaimed to Tillamook County and
to A. F. Coates Lumber Company
$4,819.24
$1,660.41
2
160.
Land only quitclaimed to Tillamook County in June 1939
160.00
3
160.
Land and timber in Lincoln County foreclosed in 1959
for delinquent taxes
1,748.85
160.00
Total
1,980.41
$6,568.09
$1,980.41
Total loss claimed including land and timber
$8,548.50
In Group I which comprised 1,660.41 acres, there were considerable unpaid taxes due to the county. The A. F. Coates Lumber *197 Company which had been operating in part of the area, notified petitioner that it had completed its logging operations and that there was no more timber to be recovered. In August 1939 a fire occurred in part of the area and the Trask-Willamette Company, which had been logging petitioner's timber in that area, reported to petitioner that further logging operations were not feasible. Based on these reports, petitioner decided to abandon the property in 1939 and on December 26, 1939, executed two quitclaim deeds, one to Tillamook County and the other to the A. F. Coates Lumber Company. The deed to the county contained the following recitals: WHEREAS said land are worthless in that their value is less than the amount of money necessary to pay and discharge the taxes which constitute a lien against said lands, and WHEREAS the proper officials of said County have requested of Grantor that in order to save the time and expense incident to the foreclosure of said tax liens the Grantor execute and deliver its quitclaim deed to said County covering the interest of the Grantor in said lands, The deed further recited that it was "without any consideration therefor moving to the Grantor." *198 The quitclaim deed to A. F. Coates Lumber Company recited a consideration of one dollar, and conveyed 160 acres. The A. F. Coates Lumber Company owned property north of this acreage to which they desired access. Petitioner did not receive any consideration for this quitclaim deed. Group 2 comprised 160 acres which the county desired for part of a recreation park. Petitioner conveyed the land, only, to the county under a tax adjustment agreement whereby petitioner would log the timber on the land and pay the county 4 1/2 cents or 5 cents per thousand feet of timber logged on account of unpaid taxes. Group 3 comprised 160 acres in Lincoln County, Oregon, and petitioner's equity in the property was foreclosed in 1939 for unpaid taxes. Petitioner paid $3,119.49 in 1933 to cover taxes for the first half of the taxable year 1932 on land and timber owned in Tillamook County which included the above groups 1 and 2. No taxes were paid subsequent to 1933 on any land or timber owned in Tillamook County, except on 360 acres of land in section 20 on which the taxes were paid up in 1938, and on lands in section 2 on which the taxes were paid to and including 1935. The timberland owned in section *199 2 amounted to 620.41 acres. Petitioner sustained losses from damage to its timber caused by insects and fungi during the years 1936 to 1939, inclusive, in the following amounts: Amount of
Year
Loss
1936
$27,372.73
1937
33,455.56
1938
18,248.48
1939
24,331.31
These losses have not been compensated for by insurance or otherwise. During each of the years 1936 to 1939, inclusive, timber was cut from petitioner's properties. The amount of the allowance for depletion in each year on account of logging operations on petitioner's properties is as follows: Amount of
Year
Depletion
1936
$ 9,788.42
1937
14,716.87
1938
3,430.70
1939
6,910.35
Opinion Issue 1. The first question for determination is whether petitioner is entitled to deductions for losses resulting from damage to its timber by insects and fungi in each of the years 1936 to 1939, inclusive, and, if so, the amount of the loss in each year. A proceeding was before the Board of Tax Appeals between the same parties. Oregon Mesabi Corporation, 39 B.T.A. 1033, petition to review dismissed, 109 Fed. (2d) 1014, involving the same question *200 for the calendar years 1934 and 1935, and other questions. The Board in the prior proceeding found that the fire which occurred in August 1933 killed petitioner's trees but did not destroy the timber. Petitioner would not have sustained any loss if its timber could have been cut and marketed within a reasonable time after the fire. Because the trees were fire-killed, however, it was known that insects and fungi which attack dead trees, would eventually and over a period of years destroy all of petitioner's timber. The destruction of the timber goes on increasingly for a number of years and becomes progressively greater. It was found as a fact that petitioner's entire investment in its timber was not lost in 1933, the year of the fire. It was further found that petitioner's entire ultimate losses were not certain or ascertainable in 1933. The Board, in holding that petitioner sustained losses of $19,425.71 for 1934 and $45,234.64 for 1935 due to damage to its timber by insects and fungi, said: In the entire record there is, in our opinion, nothing to prevent the petitioner from deducting in each of the years in question the cost of the proportionate amount of timber which by fair *201 and reasonable estimates can be found to have been destroyed in that year. In ascertaining the amount of the losses sustained by petitioner in 1934 and 1935, the Board took the cost of petitioner's timber as its base and applied to it the percentage of the timber destroyed by insects and fungi in each year. In this proceeding, the parties have stipulated the percentage of the timber destroyed in each of the years 1936 to 1939, inclusive, and the adjusted basis before the fire of the timber so destroyed as follows: Cost
Percentage
or Adjusted
of Timber
Basis preceding
Year
Destroyed
the fire
1936
9 percent
$27,372.73
1937
11 percent
33,455.56
1938
6 percent
18,248.48
1939
8 percent
24,331.31
Petitioner, on brief, claims deductions for loss from destruction of timber by insects and fungi only in the amounts set forth in column 3 above. In the prior proceeding, respondent contended that the entire loss was deductible in 1933, the year the fire occurred. Respondent, though recognizing that petitioner's timber was not destroyed by the fire, claimed that it had no fair market value after the fire. This was based upon the assumption that no purchaser *202 would pay anything for petitioner's timber after the fire since it was a known fact that the dead trees would be attacked and eventually destroyed by insects and fungi, and the timber could not be cut immediately because of logging and transportation difficulties and the adverse condition of the timber market in 1933. Respondent's contention was rejected. In this proceeding, respondent slightly changes his original contention. He now claims that 75 per cent of the value of petitioner's timber was destroyed by the fire in 1933, and that petitioner sustained a loss in that year of $234,000. He does not assert that petitioner's timber was destroyed by the fire. His argument as to the loss in 1933 is very much the same as in the prior proceeding. Respondent's theory that a loss of $234,000 was sustained in 1933 is based upon the amount which he contends a purchaser would have paid for the timber immediately after the fire, taking into consideration the future action of insects and fungi, the difficulties of logging operations and transportation, and the condition of the timber market at that time. Respondent then argues that petitioner's adjusted basis should be changed from its market *203 value of $312,000 (approximately cost) before the fire to $78,000 after the fire. From this latter sum, respondent would deduct the amount of the losses allowed for the years 1934 and 1935, leaving petitioner an adjusted basis of $20,849.72 as of December 31, 1935. Respondent asserts that this is proper under the provisions of section 113(b) (1) (A) [1] of the Revenue Act of 1934, although no authority has been cited in support of the assertion. *204 The same argument was made by respondent on brief in the earlier proceeding. In that proceeding, the argument was characterized as an "invalid postulate." We see no reason for changing that characterization. The purpose of the basis adjustment provisions of the Act is to prevent a loss from being deducted more than once upon the sale or other disposition of property. Mertens, Law of Federal Taxation, Volume 3, pp. 356, 601. The losses allowed to petitioner for damage to its timber go to adjust the basis in order to determine a capital gain or loss on a sale or other disposition of the property. On such a sale or disposition of the property, petitioner would be entitled to a return of capital free from tax. But losses allowed in connection with a partial destruction of the property would be taken into consideration by adjusting the basis of the property to petitioner. However, that provision of the statute has no application to the facts of this case. Petitioner has sustained a continuing loss. It is entitled to deduct as a loss in each year that proportion of the cost of the timber which by fair and reasonable estimates can be found to have been destroyed in each year. In our opinion *205 it is not proper to adjust petitioner's basis because of a theoretical loss in market value as a result of the fire. Petitioner's timber was not destroyed by the fire. It still remained as sound and marketable timber. If logged before the insects and fungi had penetrated the wood, no loss would in fact have occurred. In 1933, no one could have foretold whether a loss would have occurred since that necessarily depended upon the future lumber market. Under the most favorable circumstances if in the subsequent years there was a rise in market prices of timber, petitioner's holdings would have been logged and no loss, or little loss, would have been sustained because of the fire. Petitioner would not have been entitled to a loss deduction in 1933 since it could not then demonstrate a definitive loss in that year. As the Board pointed out in the earlier proceeding, if petitioner had attempted to deduct a loss in 1933 based upon respondent's present contention that the market value of its timber had decreased 75 per cent because of the fire, "such a showing would not support a deduction for loss," as it was analogous to a mere market fluctuation. Petitioner in its return for 1933 did *206 not claim any loss to its timber on account of the fire. Its loss commenced in 1934 when the insects and fungi first began to destroy the timber, which destruction has continued progressively. The losses allowed to petitioner for the years 1934 and 1935, plus the stipulated losses for the years 1936 to 1939, inclusive, (if petitioner is sustained here) amount to $160,833.79. The cost of the timber to petitioner in 1932 was $313,101.73. The losses claimed by petitioner from 1934 to 1939, inclusive, thus represent 51.3 per cent of its cost. Petitioner in its returns since the fire has reported as income all sums received by it as stumpage payments. These sums amounted to $35,952.93. During these years, petitioner did not log any of its timber, but entered into an agreement with a logging company whereby petitioner would receive a certain sum for its logs as they were cut and removed. In 1939, petitioner abandoned 1980.41 acres of the 3500.41 acres which it owned. This represented 56.5 per cent of its investment. Under the circumstances, it cannot be said that the losses claimed by petitioner since the fire for damage to its timber by insects and fungi are excessive. Respondent's theory *207 that the adjusted basis of petitioner's timber should be $20,849.72 as of December 31, 1935, is entirely inconsistent with the facts. The fallacy of the argument is easily demonstrable by the fact that from 1936 to 1939, inclusive, petitioner received stumpage payments of $35,952.93 from logging operations on its property, and still owns 43.5 per cent of its original holdings. Also, by the stipulation, respondent admits that the insects and fungi destroyed during the years 1936 to 1939, inclusive, 34 per cent of the sound timber existing before the fire. Petitioner's tax returns for the same period show that 26,064,791 feet of Douglas fir was cut and removed from petitioner's holdings. This represents approximately 11 per cent of the Douglas fir. Thus, about 45 per cent was either cut or destroyed during this period. Necessarily then, this merchantable timber was in existence at the end of 1935 and negatives the contention that it was destroyed in the years 1933, 1934, and 1935, either by the fire or the subsequent action of insects and fungi. Respondent does not cite any authority in support of his contention that the amounts of the losses sustained by petitioner in the years 1936 *208 to 1939, inclusive, due to insects and fungi must be measured by the market value of petitioner's timber after the fire rather than its original cost. The cases cited by him were before the Board in the prior proceeding, and are inapplicable to the facts of the case. It is therefore held that petitioner is entitled to deduct as losses for damage to its timber caused by insects and fungi during the years 1936 to 1939, inclusive, the following amounts: Year
Amount of Loss
1936
$27,372.73
1937
33,455.56
1938
18,248.48
1939
24,331.31 This question is controlled by Oregon Mesabi Corporation, supra.
Issue 2. The next question is whether petitioner is entitled to deductions for depletion on timber cut and removed from its lands in each of the taxable years, and, if so, the amount of the deduction for depletion in each year. Petitioner has used $1,346 as the unit rate per thousand feet of Douglas fir in taking depletion deductions. This rate is obtained by dividing the adjusted basis of $304,141.42 allocated to the Douglas fir by 225,830 million board feet of Douglas fir upon petitioner's holdings. The parties have stipulated that these figures *209 correctly represent the number of board feet and the adjusted basis prior to the fire. Respondent did not challenge the unit rate used by petitioner until the hearing of this proceeding. The evident purpose of respondent's change of position on this issue is to conform in principle to his contention on the preceding issue. His argument is that an adjustment of the unit rate must be made by reason of the fire which occurred in 1933, which, according to his theory, necessitates changing the basis, as has been discussed under Issue 1. The following computation adjusting petitioner's unit rate for depletion deductions is from respondent's brief: Quantity
(Bd. Ft.)
Original cost basis
$313,101.73
225,830,000
Less loss sustained by
fire in 1933
234,826.30
Adjusted basis (Decem-
ber 31, 1933)
$ 78,275.43
225,830,000
$78,275.43
Unit rate -
or $.3466 per M board
225,830,000
feet.
Respondent argues that the loss in market value caused by the fire in 1933 must be deducted from the original cost of petitioner's timber to obtain the correct unit rate for depletion. The fallacy of the argument on both this issue and the preceding issue is shown by the above *210 computation which shows the same amount of board feet after the fire as existed before the fire. All of it was merchantable as sound timber immediately after the fire. Yet, respondent claims that after the fire, the same number of board feet in the same condition as existed before the fire was worth only 25 per cent of its former value, and that this theoretical loss in value is a loss which must be deducted from the original cost to arrive at an adjusted basis pursuant to sections 113 (b) (1) (A) and 113 (b) (1) (B) of the Revenue Act of 1936. Respondent cannot prevail in this contention. The purpose of sections 113 (b) (1) (A) and 113 (b) (1) (B) is to adjust the taxpayer's original basis so that on a subsequent sale or disposition of the asset, the previous deductions for losses or depletion will be considered for the purpose of determining gain or loss. A theoretical loss in market value, however, can have no application to the rule. Petitioner is entitled over a period of years to recover its original capital if the asset is finally depleted. In each year as its timber is cut and removed, it may deduct for depletion the ppoportion of its capital investment which that timber *211 represents. Since there is no issue as to the cost or the amount of board feet, there cannot be any change in the unit rate of depletion. In this case, petitioner claimed as depletion deductions for the taxable years the sum of $34,846.16 which is approximately 11 per cent of the original cost of its Douglas fir. During the same period, it received the sum of $35,952.93 as stumpage payments which it reported as income. It is held that petitioner is entitled to depletion deductions for the years 1936 to 1939, inclusive, as follows: Year
Amount
1936
$ 9,788.24
1937
14,716.87
1938
3,430.70
1939
6,910.35
Issue 3. The question under this issue is whether petitioner is entitled to a deduction resulting from the alleged abandonment of certain lands in the year 1939, and, if so, whether such loss is a capital loss limited to $2,000 pursuant to the provisions of section 117 (d) (1) of the Internal Revenue Code. In 1939, there were large amounts of unpaid taxes due to Tillamook County in connection with petitioner's holdings. To save the County the time and expense of foreclosure proceedings, petitioner quitclaimed the bulk of this land to Tillamook County. It also quitclaimed *212 some of the land to the A. F. Coates Lumber Company. Petitioner contends that it is entitled to deduct the sum of $8,548.50 as an ordinary loss pursuant to section 23 (f) of the Revenue Act of 1938 on account of the alleged abandonment of its land and timber. Petitioner claims that the transactions cannot come within the provisions of section 117 (d) (1) of the Revenue Act of 1938 for the reason that the quitclaim deeds were not sales of property since a sale imports a consideration, and in fact, petitioner received nothing for the conveyances. It is our opinion that under the doctrine enunciated in Helvering v. Hammel, 311 U.S. 504, and Helvering v. Nebraska Bridge Supply & Lumber Co., 312 U.S. 666, the losses sustained by petitioner were capital losses and thus limited to $2,000. In the case of Helvering v. Hammel, supra, the Court pointed out that the 1934 and 1938 Acts disclosed a consistent legislative policy to enlarge the class of deductible losses made subject to the capital assets provisions without regard to the voluntary action of the taxpayer in producing the losses. In that *213 connection, it was noted that losses sustained from redemption of stock, retirement of bonds, losses from short sales, losses sustained by the failure of the holder of an option to exercise it, and losses from the charging off of worthless securities which are capital assets are all treated as capital losses from sales or exchanges even though none of these transactions involves loss from a sale. The Court held that a loss under a foreclosure sale was a capital loss, and that a foreclosure sale, even though a forced or involuntary sale, came within the provisions of section 117 (d). The same result was reached by the Court in the case of Helvering v. Nebraska Bridge Supply & Lumber Co., supra. In that case, lands owned by a taxpayer in Arkansas were sold to the state for taxes at a regular tax sale. The taxpayer was not personally liable for the taxes under Arkansas law. The Court held that the loss sustained by the taxpayer was a capital loss limited to $2,000. The Court, in effect, held that there was a sale even though no consideration passed to the taxpayer. In the present case, petitioner, in order to avoid foreclosure for unpaid taxes, conveyed *214 the property to the County. If it had not made the conveyance and the County had foreclosed in the same year, there is no question that its loss would have been a capital loss. We cannot see why a different result should be reached because of the giving of the quitclaim deeds. The conveyance to the County was as much a "forced" conveyance as a foreclosure sale would have been. The fact that a consideration did not move to petitioner is immaterial. Welch v. Street, 116 Fed. (2d) 953, 955; Edward F. C. McLaughlin, 43 B.T.A. 528; Commissioner v. Paulson, 123 Fed. (2d) 255. It is therefore held that the conveyance to Tillamook County was a sale within the meaning of section 117 (d) of the Revenue Act of 1938. With respect to the giving of a quitclaim deed to the A. F. Coates Lumber Company to a part of the same parcel which the County intended to foreclose for back taxes, the transaction involved merely another short-cut device to save several steps, to wit, the foreclosure for tax liens by the County and the purchase at a tax sale by the Coates Lumber Company for a consideration equal to *215 the tax deficiencies. If petitioner had given a deed to this particular part of the property to the County, rather than to the Coates Lumber Company, it would follow that the conclusion reached above would apply. The same conclusion is made. Presumably the Coates Lumber Company paid the County the delinquent taxes on the tract it desired to acquire. It is immaterial that petitioner deeded the land directly to the Coates Lumber Company.
It is therefore held that the deduction for petitioner's loss of $8,548.50 as claimed in its return is limited to $2,000 pursuant to section 117 (d) (1) of the Internal Revenue Code. Issue 4. The question under this issue is whether Title I A of the Revenue Act of 1936 relating to surtax on personal holding companies, as amended by section 1 of Title I of the Revenue Act of 1937 is constitutional, and, if so, whether petitioner is subject thereto. In effect, petitioner has abandoned this issue. Respondent determined a deficiency of personal holding company surtax of $18,592.95 for the year 1937 and $3,436.38 for the year 1939. Petitioner raised the question of constitutionality in its petition but has not argued the question in its briefs. Respondent *216 having determined personal holding company surtax deficiencies, it was incumbent upon petitioner to show that it did not come within that provision of the Act. Petitioner did not introduce evidence on the point. Respondent's determination under this issue is sustained. Title I A of the Revenue Act of 1936, as amended by section 1 of the Revenue Act of 1937, is constitutional. Foley Securities Corporation, 38 B.T.A. 1036; affd., 106 Fed. (2d) 731; Saxon Trading Corporation, 45 B.T.A. 16. Petitioner has failed to show that it is not subject to the above provisions. Decision will be entered under Rule 50. Footnotes
1. SEC. 113. ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS. * * * * *
(b) Adjusted Basis. - The adjusted basis for determining the gain or loss from the sale or other disposition of property, whenever acquired, shall be the basis determined under subsection (a), adjusted as hereinafter provided. (1) General rule. - Proper adjustment in respect of the property shall in all cases be made - (A) for expenditures, receipts, losses, or other items, properly chargeable to capital account, including taxes and other carrying charges on unimproved and unproductive real property, but no such adjustment shall be made for taxes or other carrying charges for which deductions have been taken by the taxpayer in determining net income for the taxable year or prior taxable years;↩