OREGON MESABI CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 90392. Promulgated May 24, 1939.

*Lowell P. Mickelwait, Esq.*, and *DeForest Perkins, Esq.*, for the petitioner.

*B. H. Neblett, Esq.*, for the respondent.

**OPINION.**

STERNHAGEN: The taxpayer took deductions of $19,425.71 for 1934 and $45,234.64 for 1935, which the Commissioner disallowed entirely. The Commissioner held that any loss resulting from the Tillamook fire was sustained in 1933, when the fire occurred, and was therefore entirely deductible in that year. In the notice of deficiency, the explanation of the disallowance is stated as follows:

The fire occurred in 1933 and the entire loss is held to be deductible in that year. All of the cedar and the hemlock as well as practically all the fir were fire killed.

The petitioner attacks this as contrary both to fact and law. The contention is that although the fire occurred entirely in 1933 and killed the timber in that year, this alone was not the occasion of a complete loss in 1933, because the timber was not destroyed but was still useful and valuable; that the destructive agents were the insects and fungi which invaded the dead timber with progressively destructive effect in the following years, resulting in successive annual losses.

To support its contention, petitioner has produced scientific and practical evidence showing that although the fire killed the trees,

they still remained useful and valuable as timber. As they stood immediately after the fire, they were hardly less desirable as wood than before. Vitality *per se* was not a factor of immediate usefulness; the timber would still have been good if nothing more had happened to it. In the mass, however, the fire operated to increase the extent of breakage both from natural falls and from felling, because the dead trees have less resilience to soften the fall, the humus cushion has been burned, and the trees are more brittle when they strike. Apparently, too, the risks of felling and consequent breakage are generally, in one way or another, enhanced by the fire. This the initiated are able to estimate in approximate percentages.

As soon as the trees are killed by fire they become the object of a continuing onslaught by insects and fungi. These insects enter at the outside, go through the bark, then penetrate the sapwood, and finally bore into the heartwood. If the owner is fortunate enough to have an immediate market and facilities for getting to it, he can sell his timber at once despite the killing by the fire. The attack by the insects is not immediately effective, but takes time. Witnesses from the United States Forestry Service and the Bureau of Entomology, testifying disinterestedly, left no doubt that this sort of damage was not felt at once but could be expected to progress over a period of years. Supplementing this testimony was that of practical and experienced timber men, those for petitioner reiterating it explicitly and those for respondent tacitly, while shifting the emphasis to marketing and transportation difficulties.

From all the evidence it has been found as a fact that petitioner's entire investment in its timber was not lost in the year of the fire, and it follows that any deduction for loss on that account was not limited to 1933. That year is not directly involved in this proceeding, and hence it is not proper that a finding be made as to what loss was in fact sustained that year. There was, doubtless, an immediate loss of some sort, and it may be presumed that a proper deduction for that year was taken and allowed. But, in the light of the evidence, it would have been clearly incorrect for petitioner on its 1933 return to have taken a deduction for the entire cost of its timber as a loss, and equally incorrect for the Commissioner to have allowed it. It is not suggested that either committed that error.

The respondent, having in this proceeding determined that all the timber loss occurred in 1933, held that there could be no deduction for 1934 or 1935. His position here is absolute and unyielding. Therefore the issue is not a choice between a presumptively correct amount or formula used by the Commissioner and an amount claimed

by the taxpayer; it is a choice between no deduction whatever, upon an invalid postulate, and some amount supported by the evidence. The respondent has not pleaded an alternative amount of deduction if his assumption of an entire loss in 1933 should turn out to be disapproved.

The Government's witnesses testified not that the damage or destruction of the timber all occurred in 1933; indeed they left it fairly clear that they did not believe it had. Their testimony was directed more to the adverse condition of the timber market and the difficulties of logging operations and transportation. It was indicated that it would have been impracticable to remove the timber from the forest, and in any event unprofitable to do so because the prevailing price was less than cost. This condition, however, was not demonstrably permanent; it would not have reasonably justified an abandonment of the timber in 1933 as worthless. Indeed, the evidence shows that logging was carried on to a substantial extent in 1934 and 1935 in the Tillamook area, this petitioner's tract alone in 1935 yielding 869,273 feet of fir and 17,898 feet of hemlock under the Trask-Willamette contract. If, therefore, petitioner had sought a deduction for 1933 based upon the evidence relied upon by respondent, the deduction must have been disallowed because there had been no definitive loss—no identifiable event such as sale, abandonment, or demonstrable worthlessness. There was only a showing of operating difficulty and commercial depression similar for our purposes to a mere market fluctuation. Such a showing would not support a deduction for loss, but indicates that the capital asset did not disappear in the earlier year.

Respondent also argues that petitioner's evidence indicates that there will be substantial salvage, and that this must serve to reduce the present loss. This argument proceeds from a misconception of the petitioner's claim. The claim is for an annual loss of an estimated portion of the composite whole, consisting of all of the timber on petitioner's tract. Even though there be a profitable disposition of some of the units of the mass, it is a mistake to treat this as if it were the salvaging of a part thought to have been destroyed. The rejection of the conception of a complete loss in 1933 carries with it the rejection of the idea that there may be salvage in later years in respect of the property mistakenly believed to have been lost. In addition to this it must be borne in mind that all logging operations resulting in commercial disposition of the timber will present the usual problems of depletion.

In the entire record there is, in our opinion, nothing to prevent the petitioner from deducting in each of the years in question the cost of the proportionate amount of timber which by fair and reasonable estimates can be found to have been destroyed in that year.

The next question is, how much in each year? The petitioner's two witnesses gave different figures. Each estimated the loss on fir and the loss on hemlock for 1934 and for 1935. There is no evidence as to cedar; but the quantity of cedar was comparatively small and petitioner was perhaps willing to give it no thought, so no finding has been made as to cedar and no deduction may be allowed for it on this record. The petitioner treats its two witnesses as equally qualified, and submits the alternative of their two computations. Neither computation is presented as more than an estimate, and neither has been or, we apprehend, can with entire logic be demonstrated. Upon this question of fact a finding has been made as to the quantum of loss. That there is room for a flexible judgment as to amount must be obvious. Hence as to 1934 the finding has been expressed in terms which limit the deduction to the amount claimed by petitioner on its return and disallowed by the Commissioner. Perhaps a greater deduction might have been supported, but there can be no complaint if the finding stays within the pleadings. As to 1935, while it is clear from the evidence that the loss was substantially greater than in 1934, it is, in our opinion, not established that it was as great as the $45,234.64 which petitioner claims. It has, therefore, been found as a fact that the loss for that year amounts to $38,000, which is the amount deductible, including both fir and hemlock.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

ARNOLD dissents.