Howard F. **DUGAN** and Therese M. Dugan, Plaintiffs,

v.

**UNITED STATES** of America, Defendant.

United States District Court
S. D. New York.

Sept. 30, 1964.

Laporte & Meyers, New York City, for plaintiffs; Gordon Zimmerman, New York City, of counsel.

Robert M. Morgenthau, U. S. Atty., Louis F. Oberdorfer, Asst. Atty. Gen., C. Moxley Featherston, David A. Wilson, Jr., Burton G. Lipsky, Attorneys, Department of Justice, Washington, D. C., Harvey R. Blau, Asst. U. S. Atty., of counsel, for defendant.

LEVET, District Judge.

This is an action for the refund of federal income taxes in the amount of $13,607.82 which plaintiffs claim were erroneously collected from them for the year 1955. This court has jurisdiction under the provisions of Section 1346(a) (1) of Title 28 United States Code.

The defendant has moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and the plaintiffs have filed a cross-motion seeking the same relief in their favor.

The parties have entered into a stipulation of all the relevant facts pertaining to the taxpayers' claim and there remain no genuine issues as to any material facts.

The plaintiffs, Howard F. Dugan (hereinafter referred to as "Dugan") and Therese M. Dugan, are husband and wife. On October 27, 1950, Dugan's employer, Hotel Statler Company Inc. (hereinafter referred to as "Statler") granted Dugan an option to purchase 200 shares of common stock of Statler at a price of $22.80 per share. This option qualified as a restricted stock option. Section 130A, I.R.C. of 1939 and Section 421, I.R.C. of 1954.

Dugan exercised the option to purchase 1,763 shares of stock prior to October 22, 1954. The gain resulting from this was properly treated as capital gain.

After October 27, 1954, Dugan was entitled to exercise the option to acquire 500 shares of Statler stock provided he did so before December 31, 1954. Had Dugan asserted this unexercised portion of his option he would have received an additional 106 shares of stock in Statler representing the accumulated stock dividends to which his option entitled him.

On or about October 22, 1954, Dugan received a letter from Conrad N. Hilton, President of Statler, stating that Dugan would be paid $46,000 "as additional compensation for services" provided that on or before January 3, 1955 he would tender his option contract for cancellation. Dugan tendered his stock option contract to the agent designated in the letter on November 16, 1954 and received the $46,000.

The plaintiffs reported this $46,000 as long term capital gain on their joint income tax return for 1955. On January 23, 1959, the Commissioner of Internal Revenue assessed additional taxes against the plaintiffs for the calendar year 1955 in the amount of $13,607.82 plus interest, which plaintiffs duly paid.

On June 23, 1959, plaintiffs filed with the District Director of Internal Revenue for Upper Manhattan, New York, their claim for refund of $13,607.82.

The sole issue presented for decision is whether the payment received for the surrender of the stock option for cancellation is taxable as ordinary income or capital gain.

## DISCUSSION

The Internal Revenue Code provides in Section 421(a) (1) that pursuant

to the exercise of a restricted stock option "no income shall result at the time of the transfer of * * * [shares] to the individual upon his exercise of the option * * *." In transferring the option to Statler for cancellation, Dugan did not exercise the option. Therefore, he is not entitled to the exemption from income even though when issued the option qualified as "restricted" under Section 421.

The Supreme Court has passed on the treatment of stock options not entitled to the benefits of Section 421 in Commissioner of Internal Revenue v. Lo Bue, 351 U.S. 243, 76 S.Ct. 800, 100 L.Ed. 1142 (1956). See Commissioner of Internal Revenue v. Smith, 324 U.S. 177, 65 S. Ct. 591, 89 L.Ed. 830 (1945). There it was held that the benefit conferred on an employee by a stock option was "compensation for personal service" within Section 22(a) (now Section 61(a)). The amount of compensation was measured at the time of the exercise of the option rather than the time of granting because the options in issue were not transferable and the right to exercise them depended on continuing employment. The court stated that if the option had a readily ascertainable market value and the recipient was free to sell his option, income would be realized immediately on the granting of the option.

Until Dugan received Statler's offer, he was not free to transfer the option. See § 421(d) (1) (B). However, after the offer was received Dugan obviously could sell if he chose to and the value of the option was readily ascertainable. I hold, therefore, that Dugan received compensation in the amount of $46,000 under Section 61(a).

Section 1234 does not provide capital gains treatment because it is inapplicable where the gain in question would, without regard to Section 1234, be "treated as other than gain from the sale or exchange of a capital asset." Section 1234(c) (2). Here, the gain has been treated as ordinary income under Section 61(a). The legislative history of Section 1234 supports its inapplicability. The House Report preceding adoption stated:

"It is made clear that the section does not apply to gains on the sale of an option in any case in which income derived in connection with the option would be treated, without regard to this section, as ordinary income. As a result, the section will not apply to the sale of an employee stock option which is in the nature of compensation to the employee." H.R.No.775, 85th Cong., 1st Sess., p. 32.

■■ The general rule of interpretation which requires the broad construction of gross income "in recognition of the intention of Congress to tax all gains except those specifically exempted," Commissioner of Internal Revenue v. Glenshaw Glass Co., 348 U.S. 426, 430, 75 S.Ct. 473, 476, 99 L.Ed. 483 (1955), coupled with the principle that "provisions granting special tax exemptions are to be strictly construed," Helvering v. Northwest Steel Rolling Mills, 311 U.S. 46, 49, 61 S.Ct. 109, 111, 85 L.Ed. 29 (1940), lend additional support to the characterization of the payment to Dugan as ordinary income. It is further noted that the decision in Rank v. United States, 12 A.F.T.R.2d 6050 (decided October 29, 1963) held as I have in this case.

Plaintiffs contend that Dugan's transfer of the option to Statler was not an arms-length transaction and therefore not compensation but capital gain. Plaintiffs imply this conclusion from a reading of Treasury Regulation 1.421-6 (d) (3), which states that the transfer of an option in an arms-length transaction results in compensation and hence ordinary income.

However, Treasury Regulation 1.421-6(d) (4) states: "If the option is not exercised by the person to whom it was granted, but is transferred in a transaction which is *not* at arms length, the employee realizes compensation in the amount of the gain resulting from such transfer of the option, and such com-

pensation is includible in his gross income in accordance with his method of accounting." (Emphasis added.)

If continuance of the benefits of restricted status were sought, Treasury Regulation 1.421–4(d) sets forth rules under which a new employer, or parent or subsidiary of a new employer, may, by reason of a corporate transaction, assume a restricted stock option granted by the former employer, or, in the alternative, issue a new restricted stock option while still allowing the employee to retain the benefits of a restricted stock option. In the present case these rules were not followed.

For the foregoing reasons, the defendant's motion for summary judgment is granted with costs and the plaintiffs' cross-motion is denied.

Settle judgment on notice.