DONALD H. KUNSMAN AND LEE N. KUNSMAN, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5399–65.  Filed November 2, 1967.

*David E. Crabtree*, for the petitioners.

*B. David Freundlich*, for the respondent.

68

It is admitted that the petitioner realized gain in the amount of $40,439.10 when he was paid that sum for the surrender of his stock options in 1962. It is admitted that these options were issued to petitioner as compensation for services rendered RCA. It is respondent's position that the income received was in the nature of compensation and taxable at ordinary rates. Petitioner contends this realized gain is to be taxed at capital gains rates due to the provisions of section 1234(a), which provides as follows:

SEC. 1234. OPTIONS TO BUY OR SELL.

(a) TREATMENT OF GAIN OR LOSS.—Gain or loss attributable to the sale or exchange of, or loss attributable to failure to exercise, a privilege or option to buy or sell property shall be considered gain or loss from the sale or exchange of property which has the same character as the property to which the option or privilege relates has in the hands of the taxpayer (or would have in the hands of the taxpayer if acquired by him).

Employee stock options have been the subject of special legislation (see secs. 421–425) and numerous court decisions. This case does not demand an excursion into the general legislative and judicial history of employee stock options. Petitioner relies entirely upon the above-quoted section and he makes no argument at all that the said gain was not taxable as ordinary income if the quoted section was not applicable.

It is respondent's position that this section has no application due to section 1234(c)(2)[2] which, in the year in question, provided as follows:

(c) NON-APPLICATION OF SECTION.—This section shall not apply to—

\*     \*     \*     \*     \*     \*     \*

(2) in the case of gain attributable to the sale or exchange of a privilege or option, any income derived in connection with such privilege or option which, without regard to this section, is treated as other than gain from the sale or exchange of a capital asset;

There is no doubt that compensation for services is taxed as ordinary income even though it be in the form of compensatory stock option. *Commissioner* v. *LoBue*, 351 U.S. 243 (1956); *Commissioner* v. *Smith*, 324 U.S. 177; *Jack I. LeVant*, 45 T.C. 185, affirmed and modified on another point 376 F. 2d 434.

Petitioner argues on brief that the above nonapplication section "is not altogether clear." Petitioner sees certain language in the legislative history of the section and a Treasury regulation that leads him

---

[2] By Pub. L. 89–809 sec. 210(a), Code sec. 1234(c) was redesignated sec. 1234(d) effective Jan. 25, 1965. Since the year involved here is 1962 we will use the nonapplication statute designation of 1234(c) as it appeared prior to 1965, though subsec. (c)(2) is identical with sec. 1234(d)(2) in the Code after Jan. 25, 1965.

to the conclusion that the gain realized on the surrender of a compensatory employee stock option is to be considered compensation if the parties intended the amount paid for the surrender of the options to be compensation. He also contends this intention must be manifested at the time of the payment and surrender of the options.

Petitioner points to the report of the House Ways and Means Committee which states with respect to this nonapplication statute:

Under this exception, for example, to the extent that gain on the sale or exchange of an option to purchase stock is in the nature of compensation to an employee, such gain is not to be treated as capital gain merely because the stock, if acquired, would be a capital asset in his hands. [H. Rept. No. 775, 85th Cong., 1st Sess. (1957), 1958–3 C.B. 899.]

The language of the Senate Finance Committee report is identical. S. Rept. No. 1983, 85th Cong., 2d Sess. (1958), 1958–3 C.B. 922, 1128.

Petitioner also points to section 1.1234–1(e)(1), Income Tax Regs., which provides, in part, as follows:

(e) *Other exceptions.* Section 1234 does not apply to gain resulting from the sale or exchange of an option—

(1) To the extent that the gain is in the nature of compensation (see sections 61 and 421, and the regulations thereunder, relating to employee stock options) ;

Petitioner suggests that the foregoing shows the nonapplicability provision is not to be invoked in all cases of a sale or surrender of a restricted stock option; and therefore it will only apply in an employee stock option case where the facts show the employer paid the money for the surrender of the options as compensation for services. His argument on brief is:

Whether a payment represents compensation to the recipient is governed by the intention of the parties to the transaction. The evidence in this case shows that the elements of the lump-sum payment made to petitioner in 1962 were separately and clearly identified by RCA's personnel vice-president. Specific amounts were earmarked for severance pay and incentive plan accumulations, both compensatory items. These amounts were all the petitioner was entitled to and all that RCA could legally pay him for services rendered as a corporate officer. An equally specific amount was allocated to the surrender of petitioner's stock options, which petitioner was under no legal obligation to surrender or release to RCA.

Petitioner testified that he received the full value for his options in the sense that the $40,439.10 he received that was attributable to surrender of his options represented the option price deducted from the market price of RCA stock on the day of the calculation.

Petitioner's argument seems to be that under section 1234(a) the gain is to be considered as attributable to the underlying stock and therefore capital gain because there is no evidence of a compensatory motive at the time he was paid $40,439.10 for the surrender of his option agreements.

There is no merit in petitioner's argument. Each stock option was issued to petitioner as compensation. There is no evidence that they had any readily ascertainable market value on the date of issuance and therefore under applicable regulations the time to report income attributable to such options was postponed until the options were transferred. Secs. 1.421–6 (c) (1) and 1.421–6 (d), Income Tax Regs. Since the very purpose of the options when issued was compensatory, then what he realized when he surrendered the options was compensation or ordinary income.

Petitioner is making the same argument that was presented in *Rank* v. *United States*, 345 F. 2d 337, and *Dugan* v. *United States*, 234 F. Supp. 7, and in both of those cases the issue was determined against the employee taxpayers. In both of the cited cases, the restricted stock options which the employers had granted were surrendered to the employers and it was held the consideration received was compensation and taxable as ordinary income. In both of the cited cases it was held section 1234 would not provide for capital gains treatment because it would be inapplicable under section 1234 (c) (2) because the gain in question being compensatory would, without regard to section 1234, be "treated as other than gain from the sale or exchange of a capital asset."

In *Rank* v. *United States*, *supra*, the opinion points out that the legislative history of section 1234 (c) (2) eliminates all doubt about the section making section 1234 inapplicable when gain is realized on the surrender of compensatory stock options.

The Senate report in connection with section 1234 (c) (2) of the Code is precisely in point:

> (2) It is made clear that the section does not apply to gains on the sale of an option in any case in which income derived in connection with the option would be treated, without regard to this section, as ordinary income. As a result, the section will not apply to gain from the sale of an employee stock option which is in the nature of compensation to the employee. * * * [S. Rept. No. 1983, 85th Cong., 2d Sess. (1958), 1958–3 C.B. 999]

Also in *Rank*, the following pertinent statement is precisely in point here to answer petitioner's argument of lack of showing of compensatory motive at the time of surrender of the options:

> Since it was the purpose to *compensate* at the time the options were granted, it matters not what the motive was for putting an end to those options.

We hold for respondent on the issue presented. The $40,439.10 was taxable as ordinary income and not as capital gains.

The second issue involves the casualty loss deduction. Sections 165 (a) and 165 (c) (3) provide for a deduction for any uninsured loss sustained "during the taxable year * * * of property not connected with a trade or business, if such losses arise from * * * storm * * *."

Petitioner's pool was damaged in a 1959 storm that blew a tree over and into the pool tearing a hole in the bottom of the pool. Petitioner took a casualty loss in that year's income tax return of $220, representing repairs to the hole in the pool. The repairs were not effective and petitioner testified that in 1961 he decided the pool would have to be replaced. In the spring of 1962, it was replaced and petitioner took a casualty loss in his 1962 return in the sum of $5,411.95, representing the sum he expended for removing the Fiberglas pool and installing a new concrete pool. Petitioner had the burden of showing he sustained a casualty loss in 1962. He is not relieved of that burden because of the wording in the statutory notice to the effect that the Commissioner determined "this loss occurred in the year 1959 and is properly deductible in that year, and not 1962 when the damaged property was replaced." However, as will later appear, the question of who has the burden is immaterial.

In general, casualty losses are deductible in the year the loss is sustained. Secs. 1.165–1(d)(1) and 1.165–7(a)(1), Income Tax Regs. But this is not necessarily the year of the casualty. In *Rose Licht*, 37 B.T.A. 1096, the fire occurred in 1931 but it was held the loss did not occur until 1933, the year taxpayer settled with insurers. Also in *United States* v. *Barrett*, 202 F. 2d 804, trees were damaged by a freeze in December of 1943 and January of 1944. The taxpayer attempted to revive the trees during 1944 and 1945 but was unsuccessful and it was held the "loss" occurred in the spring of 1946 when it became apparent that the trees could not be saved. To much the same effect, see *Nourse* v. *Birmingham*, 73 F. Supp. 70 (S.D. Iowa), and *Oregon Mesabi Corporation*, 39 B.T.A. 1033.

We do not feel the facts here bring petitioner within the doctrine of any of the cases where the deduction has been permitted in a year after the year of the casualty. These are cases where the loss or the full extent of the loss was not or by its very nature could not be known until a subsequent year. But even in the cited cases there is no suggestion that the taking of the deduction could be postponed to a year beyond the year when the full extent of the loss was known. Here, under petitioner's own testimony, he knew the pool was a complete loss in 1961. Without indicating agreement with petitioner's contentions as to the amount of loss (see *Helvering* v. *Owens*, 305 U.S. 468, (1939)) or that he was entitled to take a casualty deduction in any year other than 1959, it is enough to say we hold he could not take the deduction for the 1959 casualty in a subsequent year (1962) merely because that happened to be the year he replaced the pool with a new one. He testified he knew the pool was a total loss in 1961. If the taking of the deduction for the 1959 casualty can be postponed at all to subsequent years, it cannot be postponed beyond 1961, the year that he says he

knew the pool was a total loss. The 1962 replacement did not establish the loss. In view of the fact that petitioner did take a casualty loss in 1959 and under his theory it was in the wrong amount he could have filed an amended return for 1959 when he knew the full extent of the damages in 1961. See *Jane U. Elliott*, 40 T.C. 304, 311.

We hold petitoner failed in his burden of proving he suffered a casualty loss in 1962. In fact, even if it be thought because of the wording in the deficiency notice that respondent had the burden to show petitioner did not suffer the casualty loss in 1962 we would hold respondent met the burden for the record shows conclusively that 1962 was not the proper year for taking any loss deduction resulting from the 1959 storm.

*Decision will be entered for the respondent.*