JONATHAN LOGAN, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent IRWIN C. GUILD and BERNICE GUILD, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Jonathan Logan, Inc. v. Commissioner
Docket Nos. 8218-72 8284-72.
United States Tax Court
T.C. Memo 1974-237; 1974 Tax Ct. Memo LEXIS 81; 33 T.C.M. (CCH) 1045; T.C.M. (RIA) 74237; September 16, 1974, Filed. *81 Petitioner Guild's employment with petitioner Logan, a Delaware corporation, was terminated by Logan. Guild brought a lawsuit against Logan for the alleged breach of his employment agreement which included a restricted stock option plan. Pursuant to the settlement of the lawsuit Logan permitted Guild to purchase a certain amount of stock at less than fair market value. Held, petitioner Guild failed to exercise a restricted stock option pursuant to sec. 424, I.R.C. 1954. Thus, the transfer of stock resulted in taxable income to Guild and a trade or business deduction to Logan. Held, further, the bargain element of the stock purchase is taxable to Guild as ordinary income. Held, further, legal expenses incurred by Guild with respect to the lawsuit are deductible. James S. Eustice and Stephen D. Gardner, for the petitioner in docket No. 8218-72. Elias Rosenzwieg, for the petitioners in docket No. 8284-72. George J. Mendelson, for the respondent. WILES
MEMORANDUM FINDINGS OF FACT AND OPINION WILES, Judge: Respondent determined a deficiency in the income tax for 1967 of petitioner Jonathan Logan, Inc. in the amount of $230,994.78 and in the income tax for 1967 of petitioners Irwin *82 C. Guild and Bernice Guild in the amount of $161,458.79. The issues are: (1) Whether petitioner Guild received common stock from Logan as the result of an exercise of a restricted stock option as described in section 424(a)[1] so that no income results to Guild and no business deduction is allowable to Logan; (2) If Guild realized taxable income, whether it is taxable as ordinary income or capital gain; (3) Whether Guild is entitled to a deduction for legal expenses incurred with respect to the lawsuit; (4) If Guild's purchase of Logan stock met the requirements of section 424, whether his transfer of Logan stock to his legal counsel constitutes a disqualifying disposition under section 421(b). FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Irwin C. Guild (hereinafter referred to as Guild) and Bernice Guild are husband and wife, who resided at New York, New York at the time the petition was filed herein. They filed a joint Federal income tax return for 1967 with the district director of internal revenue, New *83 York, New York. Jonathan Logan, Inc. (hereinafter referred to as Logan) is a Delaware corporation which had its principal place of business in North Bergen, New Jersey, at the time the petition was filed herein. Logan's Federal income tax return for 1967 was filed with the district director of internal revenue at Newark, New Jersey. Guild entered into an employment agreement with Logan on September 24, 1963. This agreement provided for Guild's employment as executive sales manager of Logan's R & K Originals Division until December 31, 1965. Guild was to receive a salary of $30,000 per year and a $25,000 expense allowance per year. In addition, Guild was granted the option to purchase 25,000 shares of Logan common stock at $15.46 per share. The entire option was not exercisable at one time, but was broken up into exercise periods as follows: On or after Sept. 24, 1964
10,000 shares
On or after Apr. 1, 1965
5,000shares
On or after Apr. 1, 1966
5,000 shares
On or after Apr. 1, 1967
5,000 shares
The stock subject to option during the last three exercise periods could be purchased only if the R & K Originals Division met certain gross sales and net profit increase requirements. The parties *84 agree that these conditions were met through December 31, 1966. The option was subject to certain other conditions as outlined in paragraphs 5 and 6 of the option agreement. 5. Termination of Employment and Death: If your employment by the Company or subsidiary terminates, this option shall cease for all purposes except that if such termination shall occur during the Exercise period, this option may thereafter be exercised (to the extent to which it was exercisable at the time of such termination) during a period of three (3) months from the date of such termination, but not, in any event, later than the Expiration Date * * *. Notwithstanding the foregoing provisions, if your employment is terminated for cause, all of your rights hereunder shall expire immediately upon such termination. 6. Manner of Exercise: Should you desire to exercise your option to purchase any of the shares which at the time you are entitled to purchase hereunder, you shall give written notice of such election to the Company at its principal office in North Bergen, N.J., specifying the number of shares to be purchased, which notice shall be accompanied by payment to the Company in cash (or certified or bank *85 cashier's check) of the purchase price for the number of shares being purchased. At the same time, you shall represent and agree with the Company in writing that you are acquiring the shares for investment purposes. The Company shall not be obligated to deliver any shares until they have been listed upon each Stock Exchange upon which outstanding shares of common stock at the time are listed, and not until there has been compliance with such laws and regulations as the Company may deem applicable. No fractional shares shall be delivered hereunder. Before issuing any shares upon exercise, the Company may require you to furnish a written representation that you are acquiring the shares for investment and not for distribution. [Emphasis added.] The expiration date referred to in paragraph five was September 24, 1968. The option by its terms contemplates that Guild's employment continue beyond the date specified in his employment agreement in order for him to exercise the options granted in the last two exercise periods. In October 1964, Guild exercised his right with respect to the 10,000 shares subject to option during the first exercise period. Guild's employment was terminated *86 by Logan on November 10, 1964. The following day, in a conversation with Logan's president, Guild requested that he be given what he considered due him under his employment agreement, including the right to purchase the remaining 15,000 shares subject to option. He was told that the matter would have to be litigated. Guild filed suit against Logan on January 15, 1965, in the United States District Court for the Southern District of New York. This suit was dismissed without prejudice and a new suit instituted in the New York state courts. In this action Guild alleged that he sustained damages as follows: a) Salary
$62,639.00
b) Cash Expense Allowance
3,410.00
c) Automobile
4,100.00
d) Credit card (personal use)
2,733.00
e) Trips abroad
6,000.00
f) Health insurance
251.84
g) Deprivation of the right to purchase the remaining 15,000 shares of stock covered by said option
Guild's action against Logan was settled on November 20, 1967, when Guild paid Logan $100,490 for 6,500 shares of Logan stock having a market value of $54.50 per share or $354,250 for all the shares. This settlement was in satisfaction of the claims Guild had asserted against Logan. Guild transferred 388 shares of the Logan *87 stock to his legal counsel as payment for his services in settling that action. The 388 shares had a fair market value of $22,116 for which the counsel paid $5,999.48. OPINION The first issue is whether petitioner Guild received common stock from Logan as the result of an exercise of a restricted stock option as described in section 424(a). [2] *88 Under section 421(a), the effect of such an exercise would be that no income would result to Guild upon the transfer and no deduction under section 162 would be allowed to Logan with respect to the transferred stock. [3] *89 Respondent and petitioner Logan contend that within the three-month period following Guild's discharge no option was available for Guild to exercise. They also contend that, even if an option was available during that period, Guild failed to exercise it in the manner prescribed in section 1.421-1(e) of the Income Tax Regs. At the time when Guild was discharged, he previously had exercised an option for 10,000 of the 25,000 shares that were to be made available to him under the employment contract. The next date when Guild could exercise additional warrants was April 1, 1965. Because Guild's employment terminated prior to the commencement of the next exercise period, he lost his right to exercise any of the options that otherwise would have been available. Guild argues that he did have the right to exercise his options because Logan retroactively had accelerated his rights under the option by agreeing to sell him Logan stock in settlement of his lawsuit. We do not agree. Logan contested Guild's right to purchase stock under the option from the day after his employment was terminated. Logan did nothing to accelerate Guild's rights under the option. Although after long negotiations Logan allowed Guild to purchase 6,500 shares of stock at the option price, we do not view this factor as an admission by *90 Logan that Guild could have exercised his option in November 1964. Logan used the medium of a stock sale at a bargain price to compensate Guild for damages arising out of the alleged breach of his entire employment agreement of which the stock option was a part. The Logan stock was transferred to Guild pursuant to the compromise settlement of a lawsuit not pursuant to the exercise of a restricted stock option plan. Accordingly, we conclude that the requirements of section 424(a) were not met because no option was available to Guild within the three-month period following his discharge. Furthermore, even if such an option was available, we believe that Guild failed to exercise it in the manner prescribed in section 1.421-1(e), Income Tax Regs.The term "exercise" is defined in section 1.421-1(e), Income Tax Regs., as "the act of acceptance by the optionee of the offer to sell contained in the option. In general, the time of exercise is the time when there is a sale or a contract to sell between the corporation and the individual." In order to determine whether such a sale or contract to sell was entered into we must determine whether Guild complied with the terms of the written *91 option agreement. See section 1.421-1(a), Income Tax Regs. Guild's option required that his exercise thereof be in writing specifying the number of shares to be purchased and containing a declaration that he intended to hold the stock for investment. It also required that he tender cash or a certified or cashier's check at the time of exercise. Guild contends that either his conversation with Logan's president after termination of his employment or his filing suit within three months after termination constitutes an exercise of his option. We do not agree. The conversation with Logan's president did not constitute a written exercise of the option. Furthermore, the filing of a lawsuit for damages arising out of the alleged breach of his employment agreement did not fulfill the requirements of a written exercise as set forth in the option agreement. Guild never tendered payment in the required form. He did not become obligated to buy Logan stock until final settlement of the lawsuit in 1967. We therefore hold that Guild failed to exercise a restricted stock option in the manner prescribed in section 424(a). Thus, section 421(a) does not apply in the present situation so that *92 as a result of the transfer Guild realized income to the extent of the difference between the fair market value of the stock and the option price, and Logan is allowed a deduction under section 162 for the same amount. In so holding, we have rejected petitioner's additional contention that Guild was wrongfully discharged, that the settlement was concerned only with Guild's rights under the option agreement and that Logan's delay in complying with Guild's exercise should not alter the tax consequences of the transaction. Without commenting on the validity of this reasoning, we find that Guild has failed to establish the correctness of any of the assumptions upon which such reasoning is based. Having determined that Guild realized income as a result of his purchase of Logan stock, we next must determine whether such income should be characterized as ordinary income or capital gain. Regarding the treatment of stock sales pursuant to stock option plans not entitled to the benefits of section 421, the Supreme Court has said that "when assets are transferred by an employer to an employee to secure better services they are plainly compensation. It makes no difference that the compensation *93 is paid in stock rather than in money." Commissioner v. LoBue, 351 U.S. 243, 247 (1956). The fact that Guild's option was exercisable only if certain periodic sales and profit increases were obtained by his department establishes that it was designed to secure better services from him. The other items which formed the basis of Guild's lawsuit were also compensatory items. The proceeds of the lawsuit came to Guild in lieu of compensation and should be taxed accordingly. Raytheon Production Corp. v. Commissioner, 144 F.2d 110 (C.A. 1, 1944), certiorari denied 323 U.S. 779 (1944). Guild argues that he is entitled to capital gain treatment pursuant to section 1234(a)[4] which provides that gain attributable to the sale or exchange of an option to buy or sell property shall be considered capital gain in certain situations. We previously have stated that no option was available to be exercised after the date that Guild was discharged. We do not believe that the sale of Logan stock to Guild pursuant to the settlement of the lawsuit constituted the sale or exchange of an option. Even if that were the case, however, section 1234(a) still would not apply to the present situation. Section 1.1234-1(e) (1), Income Tax Regs., *94 provides that section 1234 does not apply to gain resulting from the sale or exchange of an option to the extent that the gain is in the nature of compensation. See also Rank v. United States, 345 F.2d 337 (1965); Donald H. Kunsman, 49 T.C. 62 (1967). We therefore hold that the amount realized by Guild as a result of the stock transfer is ordinary income. The next issue is whether Guild is entitled to a deduction for legal expenses incurred with respect to the lawsuit. In view of our holding that Guild realized ordinary income to the extent of the bargain element of the stock sale, respondent concedes that Guild is entitled to deduct the legal fees relating to the lawsuit. Having held that Guild's purchase of Logan stock *95 did not qualify as the exercise of a restricted stock option, we find it unnecessary to consider respondent's argument that Guild's transfer of stock to his attorney constitutes a disqualifying disposition. Petitioner Guild has made additional arguments, all of which we have considered but none of which we believe merit further discussion. Decisions will be entered under Rule 155. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as in effect during the tax year in issue, unless otherwise indicated. ↩
2. SEC. 424. RESTRICTED STOCK OPTIONS. (a) In General. - Section 421(a) shall apply with respect to the transfer of a share of stock to an individual pursuant to his exercise after 1949 of a restricted stock option, if - (1) no disposition of such share is made by him within 2 years from the date of the granting of the option nor within 6 months after the transfer of such share to him, and (2) at the time he exercises such option - (A) he is an employee of either the corporation granting such option, a parent or subsidiary corporation of such corporation, or a corporation or a parent or subsidiary corporation of such corporation issuing or assuming a stock option in a transaction to which section 425(a) applies, or (B) he ceased to be an employee of such corporations within the 3-month period preceding the time of exercise. ↩
3. SEC. 421. GENERAL RULES. (a) Effect of Qualifying Transfer. - If a share of stock is transferred to an individual in a transfer in respect of which the requirements of section 422(a), 423(a), or 424(a) are met - (1) except as provided in section 422(c) (1), no income shall result at the time of the transfer of such share to the individual upon his exercise of the option with respect to such share; (2) no deduction under section 162 (relating to trade or business expenses) shall be allowable at any time to the employer corporation, a parent or subsidiary corporation of such corporation, or a corporation issuing or assuming a stock option in a transaction to which section 425(a)applies, with respect to the share so transferred; and (3) no amount other than the price paid under the option shall be considered as received by any of such corporations for the share so transferred. ↩
4. SEC. 1234. OPTIONS TO BUY OR SELL. (a) Treatment of Gain or Loss. - Gain or loss attributable to the sale or exchange of, or loss attributable to failure to exercise, a privilege or option to buy or sell property shall be considered gain or loss from the sale or exchange of property which has the same character as the property to which the option or privilege relates has in the hands of the taxpayer (or would have in the hands of taxpayer if acquired by him). ↩