GEORGE WINTER, JR., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Winter v. Commissioner
Docket No. 3758-81.
United States Tax Court
T.C. Memo 1983-584; 1983 Tax Ct. Memo LEXIS 203; 46 T.C.M. (CCH) 1480; T.C.M. (RIA) 83584; September 22, 1983. *203 As a result of two sinkings in 1977, salt water was deposited in P's boat engine. Salt gradually accumulated in the oil ports and caused the engine to seize in 1978. Held, P is not entitled to a casualty loss deduction for the year 1978 since the requisite "suddenness" did not exist with respect to the engine seizure and there is no evidence that any damage caused by the sinkings themselves could not have been ascertained in 1977. George Winter, Jr., pro se. Gregg M. Weiss, for the respondent. STERRETT
MEMORANDUM FINDINGS OF FACT AND OPINION STERRETT, Judge: By notice of deficiency dated January 22, 1981, respondent determined a deficiency in petitioner's Federal income tax for the year 1978 of $318.63. The issue for decision is whether the casualty loss deduction of $1,677 claimed by petitioner in his 1978 return was proper. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation *205 of facts, together with the exhibits attached thereto, are incorporated herein by this reference. George Winter, Jr. resided at Central Islip, New York, at the time of filing the petition herein. Petitioner and his spouse, Eileen Winter, timely filed their 1978 individual income tax return with the District Director, Brooklyn District. Petitioner built a 48-foot sailboat for which he bought an engine in 1975. The record does not indicate the cost of this engine. Petitioner launched the boat in 1976. In January, 1977, the boat sank as a result of a storm. Another storm caused a second sinking in May, 1977. Because of these sinkings, petitioner suffered repair costs of $2,610, for which respondent allowed a casualty loss on petitioner's 1977 income tax return in the amount of $2,510. Following the January sinking, petitioner hired a mechanic who drained the water from the engine. The mechanic and petitioner were able to start the engine, but petitioner was unable to move the boat because of ice in the harbor. After the May, 1977 sinking, petitioner, who is not knowledgeable about engines, repeated the procedure of draining the water from the engine and was able to operate *206 the boat within a day of the storm. The stipulated facts indicate that petitioner and a diesel mechanic made some repairs during 1977, but no further specifics are given with respect to what was repaired or what repairs were performed. In 1977 the only further repairs that were undertaken were the draining of the water from the engine following the sinkings. Following these procedures, petitioner believed the engine was functional. Following the submersion of the engine in salt water, salt water deposits gradually clogged the oil ports, and in July, 1978, while petitioner was operating the engine, the oil failed to reach two drive rods. The engine seized and was destroyed. In a letter dated August 19, 1980, Alex Coulter of the Service Department of Perkins Engines, from whom petitioner apparently purchased the engine, noted that "[i]f the engine was submerged, the water would pour into the air intake area. From these it would spread everywhere, particles would build up after a lag of time and conceivably create a problem * * * which you have now experienced." Also, he suggested that the proper procedure that would have prevented the seizure would have been to strip down the *207 engine and thoroughly clean and investigate all parts, especially the cylinder block oil passage ways and the crankshaft feed holes which feed the rod and the main bearings. On his 1978 Federal income tax return, petitioner claimed a casualty loss deduction of $1,677 based on the cost of restoring the engine in the amount of $1,777. In his statutory notice of deficiency, respondent disallowed the deduction in its entirety. The propriety of this deduction must be determined. OPINION The first issue for our decision is whether, in fact, petitioner's loss is properly allowable for the 1978 tax year. With respect to nonbusiness losses, section 165, I.R.C. 1954, as amended, permits a deduction for individuals only "if such losses arise from fire, storm, shipwreck, or other casualty, or from theft." Section 165(c)(3). In order to take the loss deduction, petitioner must show that the engine seized as a direct result of a storm or other casualty. Kemper v. Commissioner,30 T.C. 546, 550 (1958), affd. 269 F.2d 184 (8th Cir. 1959). [1] Obviously, the presence of the salt in the engine was a result of the storms and sinkings, but *208 could the action of the salt be said to be a direct result of the storm, especially, when the damage to the engine for which petitioner claims a deduction did not occur until over a year following the last storm? Moreover, the stipulated facts indicate that the seizure of the engine resulted from a gradual build-up of salt and, at best, only indirectly from the storm. That being so, the question arises whether the build-up of salt and concomitant destruction of the engine can be considered a casualty loss. This Court has long applied the rule of ejusdemgeneris in defining the term "other casualty" as an event with characteristics similar to those of fires, storms or shipwrecks. Aksomitas v. Commissioner,50 T.C. 679, 684 (1968). Such an event must be due to "some sudden, unexpected, or unusual cause. Anything less than this renders it hardly distinguishable from depreciation from ordinary wear and tear which cannot be deducted by a taxpayer in the case of property that is not used in trade or business." [Emphasis added.] Matheson v. Commissioner,54 F.2d 537, 539 (2d Cir. 1931). *209 The loss must be caused by a sudden force. Fay v. Helvering,120 F.2d 253 (2d Cir. 1941); Maher v. Commissioner,76 T.C. 593, 596 (1981), affd. 680 F.2d 91 (11th Cir. 1982). A casualty event occurs when an "unexpected, accidental force is exerted on property and the taxpayer is powerless to prevent application of the force because of the suddenness thereof or some disability." Aksomitas v. Commissioner,supra at 684, citing White v. Commissioner,48 T.C. 430, 435 (1967). Thus, for example, in Farber v. Commissioner,57 T.C. 714 (1972), the taxpayer had applied a chemical to his lawn in the mistaken belief that the chemical would destroy only his weeds. Within 2 weeks, his entire lawn was destroyed. We held that the suddenness element was present and awarded the loss. Farber v. Commissioner,supra at 718. However, in Maher v. Commissioner,supra at 599-600, we observed: Although there is some support for [the] view that the suddenness requirement refers to the suddenness of the precipitating event [cites omitted], we believe the *210 better and more prevalent view is to measure the suddenness of the loss itself, i.e., the lapse of time between the precipitating event and the loss proximately caused by that event. * * * There, we held that a lapse of 9 to 10 months was too long. See, e.g., Hoppe v. Commissioner,42 T.C. 820, 824 (1964), affd. on other grounds 354 F.2d 988 (9th Cir. 1965). Here, the later storm occurred in May, 1977. The engine did not fail until July of 1978. This lapse of 14 months is simply too long to meet the suddenness requirement of a casualty. Moreover, the immediate cause of the destruction of the engine was not the storm itself, but rather the gradual accumulation of salt in sensitive portions of the engine. [2]
*211 Arguably, the 1978 seizure of the engine was a consequence of the 1977 storms. If the extent of the damage caused by the storm was unknown, or unknowable until 1978 when the engine seized, it would be proper for the taxpayer to take a deduction for storm-related damage in 1978 when the condition of the engine actually deteriorated. United States v. Barret,202 F.2d 804, 806 (5th Cir. 1953), stands for the proposition that where the damage due to the casualty is not ascertainable until a later year, the deduction would be proper in such later year. In that case, a freeze damaged the taxpayer's ornamental plants. The taxpayer's gardener believed that he might be able to repair the damage. After 2 years, the gardener's efforts were unsuccessful, and the loss deduction was allowed in that year. Here, the damage was ascertainable in 1977. The engine was inundated with salt water, and there was a procedure for remedying the situation. Such an engine could have been appraised or repaired giving rise to the proper amount of the 1977 casualty loss deduction. Kunsman v. Commissioner,49 T.C. 62, 72 (1967). See, e.g., section 1.165-7(a)(2)(i) and *212 (ii), Income Tax Regs. Nowhere in the record is there an indication by someone knowledgeable of engines that the extent of the damage to the engine was not ascertainable in 1977. The subsequent action of the salt upon the engine was due to a gradual process, and thus the 1978 seizure was not a casualty. Even if we were to find that the 1978 seizure of petitioner's engine was a casualty, we still would have to deny the loss, because petitioner failed to carry his burden of proof with respect to the extent of the loss. For damage to nonbusiness property, the amount of the casualty loss, from which the deduction is derived, is equal to the difference between the fair market value of the property immediately before the casualty and the value of such property immediately after the casualty, not to exceed the adjusted basis [3] of the property. Helvering v. Owens,305 U.S. 468, 471 (1939); Millsap v. Commissioner,46 T.C. 751, 759 (1966), affd. on other grounds 387 F.2d 420 (8th Cir. 1968); section 1.165-7 (b)(1), Income Tax Regs.
*213 The record does not reveal the fair market value of the boat either before or after the storms, nor does it indicate the petitioner's basis in the boat. While petitioner may show the monetary extent of the loss by showing the cost of repair, section 1.165-7(a)(2)(ii), Income Tax Regs., rather than the fair market value of the damaged item, he must prove the basis because this provides the upper limit for his deduction. Absent proof of the basis, which is the petitioner's responsibility to provide, this Court has consistently held that the loss cannot be computed. Millsap v. Commissioner,supra at 760; Towers v. Commissioner,24 T.C. 199, 239 (1955), affd. sub nom. Bonney v. Commissioner,247 F.2d 237 (2d Cir. 1957). Thus, although this Court might be willing to estimate the extent of the loss, [4] see, e.g., Cohan v. Commissioner,39 F.2d 540, 543-544 (2d Cir. 1930), there must be some indication of the taxpayer's basis. *214 Following the foregoing discussion, we hold that petitioner is not entitled to a casualty loss of $1,677 for the 1978 tax year. Decision will be entered for the respondent.
Footnotes
1. See Scott v. Commissioner,T.C. Memo. 1956-274↩.
2. See, e.g., Scott v. Commissioner,T.C. Memo. 1956-274. In that case, a storm destroyed a backwater which protected the taxpayer's waterfront property. This Court denied a loss deduction for property damage occurring in the next year because of the "ordinary action of the elements? on the unprotected property. There is, arguably, some support for petitioner's position in the case law. See, e.g., Oregon Mesabi Corp. v. Commissioner,39 B.T.A. 1033, 1038 (1939); Burkett v. Commissioner, a Memorandum Opinion of this Court dated Sept. 28, 1951. The Oregon Mesabi case involved a forest fire which did not entirely destroy the taxpayer's timber but rendered it susceptible to further damage from fungi and insects. The Court permitted the taxpayer to deduct losses in years subsequent to the fire as the destruction of the timber progressed. We think, in light of such cases as Fay v. Helvering,120 F.2d 253 (2d Cir. 1941), Maher v. Commissioner,76 T.C. 593 (1981), affd. 680 F.2d 91 (11th Cir. 1982), and Kunsman v. Commissioner,49 T.C. 62, 72↩ (1967), that the correct approach would have been to appraise the timber after the fire, accounting for the fact that the fire rendered the timber susceptible to parasites. Comparing this value to the fair market value of the timber before the fire would have resulted in the casualty loss deduction available for that year.
3. The adjusted basis is that used for determining gain or loss. Sec. 165(b)↩. This term is defined in sec. 1011 et. seq. For petitioner's boat, which is a nonbusiness property, the basis is the cost of such property, sec. 1012, adjusted as provided in sec. 1016. The record indicates that the cost basis should have been reduced by virtue of the casualty loss deduction taken for the 1977 tax year. Sec. 1016(a)(1).
4. The evidence of the extent of the loss consists entirely of receipts produced by petitioner. Some of these receipts are not helpful in that they are illegible or do not indicate the purpose of the expenditure. As an example, petitioner's exhibit 6 is a receipt for a "7135-78D." Petitioner's exhibit 11, which indicates the greatest expenditure, $1,483.93 (the next greatest is about $119, petitioner's exhibit 5) is undated.↩