EARL F. ALLEN AND MARY BELLE ALLEN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Allen v. Commissioner
Docket No. 997-83.
United States Tax Court
T.C. Memo 1984-630; 1984 Tax Ct. Memo LEXIS 41; 49 T.C.M. (CCH) 238; T.C.M. (RIA) 84630; December 5, 1984. Jeremy C. McCamic, for the petitioners. Donna J. Pankowski, for the respondent. SHIELDS MEMORANDUM FINDINGS OF FACT AND OPINION SHIELDS, Judge: Respondent determined that there was a deficiency of $10,971.65 in the income tax of petitioners for 1980. The only issue is what part, if any, of a casualty loss of $22,482.74 is deductible by petitioners in 1980. FINDINGS OF FACT Some of the facts have been stipulated and *42 are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by reference. Petitioners resided in Wheeling, West Virginia, when they filed their petition in this case. They filed a joint income tax return for the calendar year 1980 with the Internal Revenue Service Center, Memphis, Tennessee. Since several years prior to 1980 petitioners have owned a residence on Ridgewood Avenue in Wheeling. It is situated on a steep hillside just below a tract of land owned by the Mt. Calvary Cemetery. Prior to August 31, 1975, petitioners' residence was connected to Ridgewood Avenue by an asphalt driveway. It covered a distance of about one-fourth of a mile and included a parking area at the residence for approximately ten cars.The driveway was first constructed in 1950 and was resurfaced with asphalt in 1964 and again in 1970. On August 31, 1975, a severe storm struck Wheeling and the surrounding area. The storm caused substantial and widespread property damage. During the storm over 75 percent of petitioners' driveway was ripped up and washed away by surface water. The driveway was "totally ruined," but being damages caused by surface water, *43 the loss was not covered by insurance. The record does not contain an independent appraisal of the property before or after the storm. Mr. Allen, however, estimated that the difference in value of the property before and after the storm was about $25,000.00. Between 1975 and 1980, petitioners made no attempt to replace the driveway but did make temporary repairs with slag so that it could be used. Their plans and efforts to repair or replace the driveway were complicated and delayed by the fact that several springs had surfaced in the area after the storm. The springs were apparently brought to the surface by erosion from the surface water during the storm. The volume of the surface water during the storm as well as the volume of the water in the springs after the storm was apparently affected by the removal of trees and other ground cover on the adjoining property owned by Mt. Calvary Cemetery. From about 1975 through 1979 Mt. Calvary Cemetery had permitted its 30 acre tract to be strip-mined. The strip-mining required the removal of all trees and other ground cover as well as the actual restructuring of the surface of the 30 acres. Petitioners contend that the *44 changes in the surface of this property plus the blasting and grading necessary to the strip-mining contributed to the amount of surface water flowing from the 30 acres onto the surface of the property of petitioners and out of the springs in the area of their driveway. In 1980, petitioners decided to completely replace the driveway and after consultation with Johnson McKinley, a civil engineer, they used reinforced concrete instead of asphalt. At Mr. McKinley's suggestion, they also made drainage corrections and added culverts in order to avoid run-off problems from the springs and the mining operations on the property of Mt. Calvary Cemetery. The total cost of the material, labor and machinery used in the construction of the new driveway including culverts and drainage facilities was $22,482.74. On their 1980 federal income tax return, petitioners deducted this amount as a casualty loss. Respondent determined that the deduction should be denied in its entirety because petitioners had failed to establish the amount of their loss or that it occurred in 1980. OPINION Section 165(a) [1] allows a deduction for a loss "sustained during the taxable year and not compensated *45 for by insurance or otherwise." Section 165(c)(3) limits the deduction for nonbusiness losses sustained by individuals, to losses arising "from fire, storm, shipwreck, or other casualty, or from theft." In this case petitioners obviously sustained an uncompensated loss of some amount from a storm. The burden of proof as to the amount and the year of the loss is on petitioners. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). [2]
A casualty loss is allowable only in the taxable year in which the loss is "sustained." Section 165(a); Hunter v. Commissioner,46 T.C. 477, 492 (1966). As a general rule a loss is considered "sustained" in the taxable year in which it "occurs as evidenced by closed and completed transactions and as fixed by identifiable events occurring in such taxable year." Sec. 1.165-1(d)(1), Income Tax Regs. In the usual case a loss is sustained in the year *46 in which the storm or other casualty occurs. There is a line of cases, however, in which the losses are found to have been sustained in a year subsequent to the casualty. These are cases where th loss or the full extent of the loss is not, or by its very nature cannot be, known until the subsequent year. See Kunsman v. Commissioner,49 T.C. 62 (1967) and the cases cited therein at 72. In arguing the the storm damage to their driveway was not ascertainable in this case until five years after the storm, petitioners rely on United States v. Barret,202 F.2d 804 (5th Cir. 1953). In that case ornamental trees were destroyed by a freeze which occurred in 1943. On the advice of an expert in such matters, the taxpayer attemted for two years to revive the trees by treatment but in the spring of 1946 it was concluded that the trees were lost. The deduction was claimed on the 1946 return. The Court held that the damage to the trees was latent and their fate was uncertain until 1946. In doing so, the Court distinguished the year of the loss from the year of the casualty and allowed the deduction in 1946. Petitioners also rely on Burkett v. Commissioner, *47 a Memorandum Opinion of this Court dated September 28, 1951. That case involved a beach house which, unknown to its owner, became detached from its supporting posts during a hurricane in 1944. As the sand later settled, the posts shifted causing damage to the house in 1946. We concluded that the delayed action of the hurricane which caused the loss could not have been foreseen in 1944 and the deduction was allowed in 1946. Neither Barret nor Burkett are of any assistance to petitioners in this case because in both of those cases, as in all other cases reaching a similar conclusion, the loss or the full extent of the loss was not, or by its very nature could not be, determined until a subsequent year. Kunsman v. Commissioner,49 T.C. 62, 72 (1967). By contrast, in this case the damage and the extent of the damage to the driveway was known immediately after the storm. As in Kunsman v. Commissioner,supra, the testimony of petitioner, Earl F. Allen, by itself clearly establishes that he knew the driveway was totally destroyed immediately after the storm in 1975. [3] Since no loss is claimed with respect to any damages other *48 than those associated with the driveway, it is apparent that petitioners' casualty loss occurred and was deductible in 1975 not 1980. Kunsman v. Commissioner,supra.
Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue, unless otherwise indicated.↩
2. All rule references are to the Tax Court Rules of Practice and Procedure unless otherwise provided.↩
3. Mr. Allen's testimony also contained the only evidence in the record of the amount of the actual casualty loss when he stated that in his opinion the market value of the property was decreased by about $25,000 as a result of the loss of the driveway. We need not address this question, however, in view of our decision with respect to the year of the deduction.↩