**Frank L. SHAMBURGER et al., Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Appellee.**

**Bobby F. SHAMBURGER and Bobbye R. Shamburger, Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Appellee.**

**Nos. 74–1413 to 74–1415.**

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 10, 1974.

Decided Jan. 2, 1975.

W. Dane Clay, Little Rock, Ark., for appellants.

Dennis M. Donohue, Atty., Dept. of Justice, Washington, D. C., for appellee.

Before ROSS and STEPHENSON, Circuit Judges, and SCHATZ,* District Judge.

PER CURIAM.

Taxpayers Bobby F., Bobbye R. and Frank L. Shamburger appeal from a decision of the United States Tax Court, denying their petitions for review of income tax deficiencies assessed against them by the Commissioner of Internal Revenue.

These deficiencies related to income derived during the years 1963, 1964 and 1965 which the taxpayers had reported as long-term capital gain. The Commissioner contended that it should have been reported as ordinary income and taxed at that rate. The Tax Court sustained the Commissioner's determination. Therefore, the sole issue before this Court on appeal is whether the income in question was ordinary income or long-term capital gain.

The undisputed facts reveal that Bobby F. Shamburger, his father, Frank L. Shamburger, and six other individuals organized Christian Universal Life Insurance Company in Illinois on April 5, 1961. This company had authorized capital stock of 2,500,000 shares. Two million of these shares were sold to the public at $2.00 per share. The other 500,000 shares were retained by the company and became the subject of a "Key Personnel and Employees' Stock Warrant and Restricted Stock Option Plan" which was drawn up by a stock rights committee chaired by Bobby Shamburger. This plan, which was approved by the shareholders on August 9, 1972, provided for the grant of options to purchase 300,000 shares and the grant of warrants to purchase 200,000 shares. These warrants were to be sold for four cents each or two percent of the fair market value of the stock as determined by the committee at the time of granting the warrants, whichever was greater. The warrants entitled the holder to purchase shares of stock for $2.00 each or the fair market value of the shares as determined by the committee at the time the warrants were granted, whichever was greater. The purpose of the plan, as stated therein, was to provide additional incentive to employees to promote the success of the business.

* ALBERT G. SCHATZ, United States District Judge for the District of Nebraska, sitting by designation.

Prior to the actual implementation of the plan, the common stock of Christian Universal was split four for one; and when the warrants were actually granted they were sold for one cent each and they entitled the holder to purchase shares for fifty cents each. The stock rights committee authorized the sale to Bobby of warrants for 177,700 shares for $1,777.00, while Frank was allowed to purchase warrants for 28,000 shares for $280.00. These warrants were delivered to Bobby and Frank about November 26, 1962.

Neither Bobby nor Frank ever exercised any of their warrants. However, they did sell part of them during 1963, 1964 and 1965 for prices ranging from around fifty cents each to around $2.00 each, realizing substantial financial gain. Prior to July 23, 1963, there had been no established market for the warrants. A relatively small number were traded between that date and the end of 1963 and sold for between $1.50 and $1.965 per warrant. It is the income derived by Bobby and Frank from their sales of warrants which is the subject of this action.

The taxpayers contend that regardless of the stated purpose of the plan, the warrants were actually sold to them for the purpose of allowing them to retain effective control of the company should they ever be challenged. For this reason, they argue, the income derived from the sale of the warrants does not fall within the rule of Commissioner of Internal Revenue v. LoBue, 351 U.S. 243, 247, 76 S.Ct. 800, 803, 100 L.Ed. 1142 (1956), which held that "[w]hen assets are transferred by an employer to an employee to secure better services they are plainly compensation."

Alternatively, taxpayers urge that the warrants were investments by them rather than compensation, because they paid a fair market price for them originally.

The Tax Court rejected the taxpayers' arguments. It held that the control argument was essentially the same as the proprietary interest argument rejected by the Supreme Court in *LoBue*. It also found that the warrants did not have a readily ascertainable fair market value at the time of their issuance. Therefore, the taxpayers had not established that they obtained the warrants for one cent each as an investment rather than as compensation.

We have reviewed the record and conclude that there is substantial evidence to support the Tax Court's findings of fact. We also find that it correctly applied the relevant law. We therefore affirm the decisions of that court based on its thorough and well-reasoned opinion in this case, which is reported at 61 T.C. 85 (1973).