WILLIAM G. NORTH AND LOIS H. NORTH, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
North v. Commissioner
Docket No. 21147-80.
United States Tax Court
T.C. Memo 1986-215; 1986 Tax Ct. Memo LEXIS 394; 51 T.C.M. (CCH) 1085; T.C.M. (RIA) 86215; May 28, 1986. William G. North, pro se. Donald Rightnour, for the respondent. TANNENWALD
MEMORANDUM OPINION TANNENWALD, Judge: Respondent determined the following deficiencies and additions to petitioners' Federal income taxes: Additions to tax
Taxable Year
Deficiency
Sec. 6653(a) [1]
1973
$19,282
$964
1974
98,705
4,935
1975
191,442
9,572
1976
6,753
338
The issues for decision are (1) whether payments made pursuant to certain agreements constituted income to petitioners or to a corporation known as Timber Management Far East Limited, and (2) whether petitioners are liable for additions to tax under section 6653(a). *395 This case was submitted fully stipulated under Rule 122. This reference incorporates herein the stipulations of facts and attached exhibits. Petitioners, husband and wife, resided in Hamilton, New Zealand at the time they filed their petition in this case.They timely filed joint Federal income tax returns for the calendar years 1973 through 1976 with the Internal Revenue Service Center, Philadelphia, Pennsylvania. Petitioners were United States citizens during the taxable years at issue. During the taxable years at issue, petitioner William G. North (hereinafter referred to as "petitioner") was in the business of providing services relative to the lumber industry, including consulting, management, quality control of log production, forest survey, road survey and road engineering. Petitioner entered into an agreement, effective January 1, 1973, with Seamech, Ltd. to provide such services in the Pagai Islands ("Timber Agreement"). The Timber Agreement provided that any necessary amendments or changes were to be made in writing and by mutual consent. The terms of the Timber Agreement were amended effective June 30, 1975 ("Amended Timber Agreement"). Seamech, Ltd. was part *396 of a complex of corporations referred to herein as the Bowater Group, and various subsidiaries of the Bowater Group transacted business with petitioner, pursuant to the Timber Agreement and the Amended Timber Agreement (hereinafter sometimes collectively referred to as the "Timber Agreements"), including C.V. Minas Lumber Corporation, Gumer Ltd., Seamech Ltd., and Temenggong Securities Ltd. ("Temenggong"). On September 7, 1973, the Aeolus Trading Company Limited was incorporated in Hong Kong, and on October 9, 1973, the company changed its name to Timber Management Far East Limited ("TMFE"). Petitioner and his sons were the sole shareholders of TMFE. On April 25, 1973, petitioner notified the Bowater Group (specifically Temenggong) that he was assigning the Timber Agreements to TMFE, and that he was acting solely as an agent for TMFE. Temenggong, however, refused to recognize the assignment and continued to treat the Timber Agreement (and in turn the Agended Timber Agreement) as a personal contract between petitioner and the Bowater Group. Throughout the taxable years at issue, the Bowater Group, in both its correspondence with petitioner and in its internal memoranda, never *397 recognized TMFE as a party to the Timber Agreements. During the taxable years at issue, the Bowater Group made payments for services performed under the Timber Agreements. Only one of these payments was made directly to TMFE, while the rest took the form of checks made out to "cash" which were personally endorsed by petitioner or one of his sons. Petitioner and members of his family also received numerous cash advances directly from the Bowater Group. The central issue for decision is whether the payments made by the Bowater Group for services performed under the Timber Agreements constituted income to petitioner, individually, or to TMFE. Petitioner argues that he was merely an agent or employee of TMFE, and that all payments made by the Bowater Group to him were made for the account of TMFE and not to him personally. On this basis, petitioner claims that the only income he earned during each taxable year at issue was the salary he received from TMFE, which he claims never exceeded $25,000. Since petitioner was a United States citizen living abroad during these years, and since all the salary he allegedly received was foreign earned income not derived from sources within the *398 United States, petitioner argues that he is entitled to the $25,000 exclusion on such income under section 911 during each of the taxable years at issue, and that he therefore owes no back taxes. Respondent, on the other hand, argues that the payments made by the Bowater Group were made not to TMFE, but to petitioner, personally, and that these payments thus constitute income earned by petitioner. [2] For the reasons discussed herein, we agree with respondent. Resolution of this issue requires us to determine who in fact controlled the earning of the income, petitioner or TMFE. Bagley v. Commissioner,85 T.C. 663, 675 (1985); Benningfield v. Commissioner,81 T.C. 408, 418-419 (1983), and cases cited therein. Courts have examined two factors in making such a determination. First, it must be established that the service-performer is a person "whom the corporation has the right to direct or control in some meaningful sense." Johnson v. Commissioner,78 T.C. 882, 891 (1982), affd. without published opinion *399 734 F.2d 20 (9th Cir. 1984); see also Vnuk v. Commissioner,621 F.2d 1318, 1320-1321 (8th Cir. 1980), affg. a Memorandum Opinion of this Court; Bagley v. Commissioner,supra at 675; Schuster v. Commissioner,84 T.C. 764, 776 (1985). Second, it must be shown that there exists "between the corporation and the person or entity using the services a contract or similar indicium recognizing the corporation's controlling position." Johnson v. Commissioner,supra at 891. See also Bagley v. Commissioner,supra at 675; Schuster v. Commissioner,supra at 775. Petitioners have the burden of proving that respondent's determination was erroneous. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). After a careful review of the record, including the numerous exhibits, we find that petitioners have not met this burden. Petitioners have failed to prove that petitioner was in fact subject to TMFE's control. They have offered no evidence, such as an employment contract or payroll records, that establish any such relationship between petitioner and *400 TMFE. Moreover, they have failed to show that TMFE controlled to dictated petitioner's performance under the Timber Agreements. Concededly, there is a problem of proof in this respect where a closely-held or one-man personal service corporation is involved (see Bagley v. Commissioner,supra at 675), but the fact of the matter is that the record before us is devoid of any probative evidence as to how TMFE operated. The most that can be said, on the basis of that record, is that it was a nominee depositary of funds earned by petitioner. With respect to the second criteria enunciated above, there is no evidence showing that there was a contract between TMFE and the Bowater Group, nor any action on behalf of the Bowater Group that would enable us to infer that such an agreement existed. Quite the opposite, not only did the Bowater Group refuse petitioner's request to revise the Timber Agreement and assign it to TMFE, but the overwhelming weight of the evidence indicates that throughout the years at issue the Bowater Group always treated the Timber Agreements as personal service contracts between it and petitioner, not TMFE. Petitioners' assertions on brief that *401 there was an oral understanding on the part of the Bowater Group that the services were being performed on behalf of TMFE is simply without support in the record before us. Some of the evidence of record does indicate that TMFE was a bona fide corporation engaged in providing timber related services. However, this is not the focus of the inquiry herein. For even assuming arguendo, that TMFE was a valid corporate entity for Federal income taxation purposes, petitioners have still failed to prove that the fees paid by the Bowater Group were earned by TMFE instead of petitioner. Moreover, petitioners, on brief, have tried to convince this Court that much of the objective evidence which argues against their position can be explained by looking at the regional peculiarities of doing business in Southeast Asia. However, petitioners were clearly forewarned that they could not testify by brief in order to meet their burden of proof. Nevertheless, petitioners opted to litigate their case by mail from New Zealand, and have offered us no testimony, from either themselves or from other witnesses, that is admissible as evidence to corrobrate the claims they have asserted. Thus, absent the *402 introduction of such additional evidence, petitioner's arguments and explanations cannot be taken into account in reaching our decision herein. [3]
Finally, we turn to whether petitioners are liable for additions to tax under section 6653(a) for "negligence or intentional disregard of rules and regulations." Once again, the burden of proof is on petitioners, Tomburello v. Commissioner, 86 T.C.     (March 31, 1986) (slip opinion at 11); Rule 142(a), and again we find that petitioners have failed to meet their burden. Given the Bowater Group's refusal to accept petitioner's assignment and revision of the Timber Agreement, coupled with their consistent treatment during the taxable years at issue of the Timber Agreements as personal service contracts with petitioner, we find to be unrealistic any claim by petitioner that he in good faith believed that TMFE was the true earner of *403 the income. Compare Wofford v. Commissioner,5 T.C. 1152, 1166 (1945). The assertions on brief of an oral understanding by the Bowater Group are of no help to petitioners on the issue of good faith because of the absence of probative evidence in the record. In essence, petitioners ask us to fill in the gaps in the record by drawing inferences favorable to them. The problem is that the facts of record are too few and the gaps too large for us to accede to their request. Decision will be entered for the respondent.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, and all Rule references are to the Rules of Practice and Procedure of this Court.↩
2. Respondent took the section 911 exclusion into account in making his determinations set forth in the deficiency notice.↩
3. Petitioners make vague claims to deductible expenses if the income in question is charged to them. However, respondent allowed various expenses as offsets to the claimed income during the years at issue and there is no probative evidence of record to support an allowance of additional amounts.↩