JOE RICHARD AIDOO AND AUTRY LOUIE AIDOO, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Aidoo
Docket No. 6176-91
United States Tax Court
T.C. Memo 1993-28; 1993 Tax Ct. Memo LEXIS 28; 65 T.C.M. (CCH) 1798; January 27, 1993, Filed *28 Decision will be entered under Rule 155. Joe Richard Aidoo and Autry Louie Aidoo, pro sese. For respondent: Linda Neal SHIELDS
SHIELDS
MEMORANDUM FINDINGS OF FACT AND OPINION SHIELDS, Judge: Respondent determined deficiencies in and additions to petitioners' Federal income tax as follows: Additions to Tax
Sec.
Sec.
Sec.
Year
Deficiency
6651(a)
6653(a)(1)(A)
6653(a)(1)(B)
1987
$ 2,411.00
--
$ 120.55
[1]
1988
22,652.31
$ 2,265.23
1,132.62
--
The issues for decision are: (1) Whether certain sales of stock in 1987 and 1988 resulted in capital losses as reported by petitioners or capital gains as determined by respondent; (2) whether certain expenses claimed by petitioners on Schedule C of their 1988 return are deductible under section 162; [1] (3) whether petitioners are liable for additions to tax for negligence under section 6653(a)(1)(A) and (B) for 1987 and under section 6653(a)(1) for 1988; [2] and (4) whether petitioners are liable *29 under section 6651 for additions to tax for having failed to file a timely return for 1988. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by reference. Petitioners have been married since 1974 and were residents of New Orleans when they filed their petition. Petitioner Joe Richard Aidoo was born in 1949 in Ghana, West Africa. He came to the United States in 1974 *30 to attend Delgado University. He did not graduate from Delgado, but in 1978 he obtained a bachelor's degree in business administration from Loyola University. At about the same time he organized YAF & Associates, Inc., an S corporation, for the purpose of consulting with diplomats and other individuals from Indonesia, Nigeria, and other African countries about planning, financing, and doing business in Africa. Petitioner Autry Louie Aidoo has a master's degree in counseling from Xavier University. During 1987 and 1988 and for some time prior thereto she was employed as a real estate agent or broker. Petitioners filed joint income tax returns with respondent for 1987 and 1988. The returns were prepared by Mr. Aidoo since Mrs. Aidoo has no knowledge or experience in the preparation of returns. The 1987 return was timely filed. Their 1988 return was executed by them on February 22, 1989, shortly before Mr. Aidoo left on a business trip to Indonesia. When the return was signed, Mr. Aidoo expected to be in Indonesia for only a short time and made no arrangements to file the return or request an extension in his absence. However, his trip to Indonesia continued until the second *31 week in May and the 1988 return was not filed with respondent until May 26, 1989. In March of 1985, Mr. Aidoo abandoned his consulting business and, together with Patrick H. Temple (Temple) and William K. McConnell (McConnell), Temple's father-in-law, undertook the development of a nursing home. To build and operate the nursing home, Mr. Aidoo and Temple proceeded on July 12, 1985, to incorporate Red River Center Corporation (Red River) under the corporate laws of Louisiana. On the same date, Red River issued 6,500 shares of its no-par common stock to Mr. Aidoo for $ 100, the amount of paid-in capital required under Red River's articles of incorporation. During the remainder of 1985 and up to about November of 1986, Mr. Aidoo on behalf of Red River applied to and obtained from the Louisiana authorities a certificate of need for a nursing home to be constructed in Bossier City. During the same period he also obtained from P and R Construction Company a contract for the construction of the nursing home, determined the amount of financing needed, and obtained a construction loan commitment from a local bank. In or about November of 1986, Mr. Aidoo discussed all of the above with *32 McConnell. At that time Mr. Aidoo was told that McConnell wanted to buy his stock in Red River so that McConnell would have the stock for his grandchildren who are also the children of Temple. After further negotiations between Mr. Aidoo, Temple, and McConnell, an Act of Cash Sale was entered into on October 26, 1987, between Mr. Aidoo and Temple, under the terms of which 2,400 shares of Mr. Aidoo's stock in Red River were sold to Temple for $ 40,615. On May 12, 1988, an agreement of redemption was entered into between Mr. Aidoo, Red River, Temple, and McConnell under the terms of which Mr. Aidoo's remaining 4,100 shares of Red River stock were redeemed by Red River for $ 100,385. During the period from March of 1985 when Mr. Aidoo abandoned his consulting business until May of 1988 when the remainder of his stock in Red River was redeemed, he not only devoted his full time to the development of the nursing home for Red River, but he also made a number of expenditures on behalf of the corporation. These expenditures included: (1) $ 1,500 for an option on the land upon which the nursing home was to be built plus $ 500 for an extension of the option; (2) $ 2,000 to a company in *33 Mandeville for assistance in securing the financing for the nursing home; and (3) certain fees and other expenses incurred in the negotiation of the certificate of need, the financing for the project from a local bank, and the contract for the construction of the nursing home. Using $ 225,600 as their basis in the 2,400 shares of stock transferred to Temple, petitioners claimed a net capital loss on their 1987 return of $ 184,985. On their 1988 return, petitioners claimed a basis in the 4,100 shares redeemed by Red River of $ 410,000, and reported a net capital loss of $ 309,100. On their 1988 return petitioners also claimed a capital loss carryover from 1987 for the $ 184,985 capital loss reported in that year. On Schedule C of their 1988 return, petitioners claimed deductions for business expenses in the following amounts: Travel
$ 7,490
Rent
1,800
Utilities
5,840
Total
15,130
In the notice of deficiency, respondent concluded that petitioners' basis in the Red River stock was $ 100, of which $ 37 was allocated by respondent to the 2,400 shares transferred to Temple in 1987 and $ 63 to the 4,100 shares redeemed by Red River in 1988. With these figures respondent *34 determined that Mr. Aidoo had long-term capital gains of $ 40,578 and $ 103,322, respectively, in 1987 and 1988. With respect to the business expenses deducted by petitioners in 1988, respondent determined they were entitled to deduct the amounts shown below and disallowed the balance: Travel
$ 154
Rent
1,250
Utilities
1,560
Total
2,964
Finally, respondent determined that petitioners were liable for additions to tax for negligence in both 1987 and 1988 and for failing to file a timely return for 1988. OPINION Petitioners have the burden of proof on the determinations made by respondent with respect to the capital losses, business deductions, and additions to tax. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). They also have the burden of proof with respect to Mr. Aidoo's basis in the Red River stock. Rule 142(a); Burnet v. Houston, 283 U.S. 223 (1931); Interlochen Co. v. Commissioner, 24 T.C. 1000 (1955), affd. 232 F.2d 873 (4th Cir. 1956). 1. Capital gains or losses on disposition of Red River stock
Petitioners claim that Mr. *35 Aidoo incurred a capital loss in 1987 upon the transfer to Temple of his 2,400 shares of Red River stock for $ 40,615 because, under section 83, his basis in the stock was its fair market value on the date of the transfer which they contend was $ 225,600. They, therefore, assert that he had a capital loss on the transfer in 1987 of $ 184,985. With respect to 1988 petitioners contend that Mr. Aidoo incurred a capital loss upon the redemption by Red River of Mr. Aidoo's remaining 4,100 shares of stock for $ 100,385 because, under section 83, his basis in the 4,100 shares was its fair market value on the date of the redemption which they contend was $ 410,000. They, therefore, conclude that his capital loss in 1988 upon the redemption of the 4,100 shares was $ 309,615. Respondent disagrees with petitioners' claims to capital losses on the disposition of Mr. Aidoo's stock in Red River, or to any basis in his 6,500 shares of such stock in excess of $ 100, the amount that he paid for it. In fact, respondent determined that Mr. Aidoo realized a capital gain of $ 40,578 on the transfer of his 2,400 shares to Temple in 1987 and a capital gain of $ 103,322 on the redemption by Red River *36 of his other 4,100 shares in 1988. We agree with respondent to the extent and for the reasons set forth below. First, in the record before us there is no support for petitioners' contention that section 83 [3] is applicable to Mr. Aidoo's Red River stock. In order for section 83 to apply, inter alia, the property must be transferred "in connection with the performance of services." Sec. 83(a). While this term does not require the property to be transferred as compensation for services, it does require some relationship between the services performed and the property transferred. Montelepre Systemed, Inc. v. Commissioner,T.C. Memo. 1991-46, affd. 956 F.2d 496 (5th Cir. 1992); see MacNaughton v. United States, 888 F.2d 418 (6th Cir. 1989); Alves v. Commissioner, 79 T.C. 864, 872-873 (1982), affd. 734 F.2d 478 (9th Cir. 1984). *37 The following factors are to be considered in determining whether property is transferred in connection with the performance of services: (1) Whether the property right is granted at the time the employee or independent contractor becomes employed or otherwise associated with the employer; (2) whether the property restrictions are linked explicitly to the employee's or independent contractor's tenure with the employing company; (3) whether the consideration furnished by the employee or independent contractor in exchange for the transferred property is services; and (4) the employer's intent in transferring the property. Montelepre Systemed, Inc. v. Commissioner, T.C. Memo. 1991-46; see also Centel Communications Co. v. Commissioner, 92 T.C. 612, 627 (1989), affd. 920 F.2d 1335 (7th Cir. 1990); Bagley v. Commissioner, 85 T.C. 663, 670 (1985), affd. 806 F.2d 169 (8th Cir. 1986); Alves v. Commissioner, supra.
The record before us contains no evidence of (1) an employment contract or other agreement with regard *38 to his stock between Red River and petitioner; (2) the relationship, if any, between any property restrictions placed on the stock and Mr. Aidoo's tenure with Red River; (3) the services, if any, to be rendered by Mr. Aidoo in consideration for or in connection with the stock; and (4) the intent of Red River in issuing the stock to Mr. Aidoo. Since petitioners have failed to establish that the above factors were applicable to their receipt of the Red River stock, they have failed to carry their burden of proving that the stock was transferred to Mr. Aidoo in connection with the performance by him of services. Therefore, section 83 is not applicable and Mr. Aidoo's stock is subject to the general rules for the computation of basis and the recognition of gain as set out in sections 1001, 1011, and 1012, which in the absence of unusual circumstances not present here, measure the gain by the excess of the purchase price of the property over the taxpayer's basis therein. Detroit Edison Co. v. Commissioner, 319 U.S. 98, 102 (1943); sec. 1012; sec. 1.1012-1(a), Income Tax Regs.
According to respondent, Mr. Aidoo's basis in the Red River stock is $ 100, *39 the amount he paid for it. Petitioners assert that in addition to the $ 100, Mr. Aidoo also incurred expenses on behalf of the corporation which constitute part of his basis in the stock. As set forth in our findings, Mr. Aidoo paid $ 2,000 to a company in Mandeville for assistance in securing financing for Red River and another $ 2,000 to obtain and keep in effect an option on the land upon which the nursing home was to be built. We have also found that from March of 1985 until about October or November of 1987, he not only devoted his entire time to Red River affairs but he also paid various fees and other expenses for the corporation. Even though petitioners have failed to substantiate the exact nature and amount of such expenditures, we are satisfied and so find after observing Mr. Aidoo's demeanor at trial, and taking into account his education and experience, as well as his accomplishments with respect to the development of the nursing home, that such expenditures were incurred and paid by him. See Mayes v. Commissioner, 21 T.C. 286, 290 -91 (1953). Such expenditures may be treated as capital contributions to the corporation. See Koree v. Commissioner, 40 T.C. 961, 965-966 (1963). *40 Under such circumstances we have the authority to estimate the expenditures made by a taxpayer. Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930), affg. and remanding 11 B.T.A. 743 (1928);IT&S of Iowa, Inc. v. Commissioner, 97 T.C. 496, 529 (1991); Sundstrand Corp. v. Commissioner, 96 T.C. 226, 375 (1991). Therefore, using our best judgment, we conclude that including the $ 4,000 of specific expenses set forth in our findings and the $ 100 paid for his shares, Mr. Aidoo expended a total of $ 15,000 in connection with his interest in Red River, which amount constitutes his basis in the Red River stock. 2. Schedule C deductions
As set out in our findings petitioners deducted $ 7,490 for travel expenses in 1988, but respondent disallowed $ 7,336 of this amount. Section 162(a) provides that a deduction shall be allowed, for ordinary and necessary expenses including travel expenses paid or incurred during the taxable year in carrying on any trade or business. However, section 274(d) imposes limits on deductions for travel expenses by providing that: *41 No deduction * * * shall be allowed -- (1) under section 162 or 212 for any traveling expense (including meals and lodging while away from home), * * *
unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating the taxpayer's own statement (A) the amount of such expense or other item, (B) the time and place of the travel, entertainment, amusement, recreation, or use of the facility or property, or the date and description of the gift, (C) the business purpose of the expense or other item, and (D) the business relationship to the taxpayer of persons entertained, using the facility or property, or receiving the gift.
The only evidence presented by petitioners in support of this deduction is the unverified oral testimony of Mr. Aidoo, which without supporting documentary evidence is insufficient to substantiate the travel deductions claimed by petitioners. Dowell v. United States, 522 F.2d 708, 716-717 (5th Cir. 1975); Hradesky v. Commissioner, 65 T.C. 87, 90 (1975), affd. 540 F.2d 821 (5th Cir. 1976). Accordingly, we conclude that petitioners *42 have failed to meet their burden of proof with respect to any travel expenses in excess of those allowed by respondent. Mr. Aidoo's testimony with regard to the deductions claimed by petitioners in 1988 for rent and utilities was vague and confusing. Since no other credible evidence was introduced in support of these deductions, respondent's determination with respect to them is also sustained. 3. Additions to tax for negligence
For the taxable year 1987, section 6653(a)(1)(A) imposes an addition to tax of 5 percent of the underpayment of tax where any part of the underpayment is due to negligence or the disregard of rules or regulations, and section 6653(a)(1)(B) provides that there shall be added to the tax an amount equal to 50 percent of the interest due on any underpayment attributable to negligence. As used in section 6653(a)(3), negligence includes any failure to make a reasonable attempt to comply with the provisions of the Code. From the record before us, it is clear that Mr. Aidoo is a well-educated individual with experience in business who knows how to report income and claim business deductions. Furthermore, petitioners have not presented any reasonable *43 argument why this addition to tax should not apply to them. We, therefore, sustain respondent's determinations of the additions to tax for 1987 under section 6653(a)(1)(A) and (B). For the taxable year 1988, respondent determined an addition to tax under section 6653(a)(1). [4] Section 6653(a)(1) provides that if any part of any underpayment of tax is due to negligence or disregard of rules or regulations, there shall be added to the tax an amount equal to 5 percent of the underpayment. As discussed above, negligence is defined as including any failure to make a reasonable attempt to comply with the provisions of the Code. With respect to the tax year 1988, it is clear from the record that petitioners not only failed to report income but also claimed unsubstantiated business deductions. Since the record shows that at least a portion of the resulting underpayment *44 was due to petitioners' failure to make a reasonable effort to comply with the applicable revenue laws, the addition to tax under section 6653(a)(1) for the tax year 1988 is sustained. 4. Addition to tax under section 6651(a) for failing to timely file the 1988 return
Section 6651(a) imposes an addition to tax where a return is not filed on or before the prescribed date unless such failure is due to reasonable cause and not to willful neglect. Reasonable cause under this section is the exercise of "ordinary business care and prudence." Jackson v. Commissioner, 86 T.C. 492, 538 (1986); sec. 301.6651-1(c)(1), Proced. & Admin. Regs. Petitioners contend that they had reasonable cause for failing to timely file their 1988 return. They have the burden of proof. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933); Clayden v. Commissioner, 90 T.C. 656, 677 (1988). As set forth in our findings the 1988 return was prepared and both petitioners signed it by February 22, 1989. Shortly thereafter Mr. Aidoo went to Indonesia on business. Although he initially expected to be in Indonesia *45 for only a short while, he in fact remained there until the second week in May of 1989. Mrs. Aidoo did not accompany him. Petitioners filed their 1988 return on May 26, 1989, approximately 2 weeks after Mr. Aidoo returned from Indonesia. Under these circumstances, we are unable to conclude that petitioners have established that their failure to timely file their 1988 return was due to reasonable cause. Therefore, respondent's determination of the addition to tax under section 6651 is sustained. Decision will be entered under Rule 155. Footnotes
1. 50 percent of the interest due on $ 2,411.↩
1. Unless otherwise indicated, all section references are to the Internal Revenue Code for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. In the notice of deficiency respondent incorrectly designated the 1988 addition to tax for negligence as being pursuant to sec. 6653(a)(1)(A) instead of sec. 6653(a)(1). However, since petitioners have argued that no additions to tax for negligence are applicable, petitioners were not prejudiced by respondent's failure to designate the correct Code section.↩
3. Insofar as applicable here, sec. 83 reads as follows: (a) General Rule. -- If, in connection with the performance of services, property is transferred to any person other than the person for whom such services are performed, the excess of -- (1) the fair market value of such property (determined without regard to any restriction other than a restriction which by its terms will never lapse) at the first time the rights of the person having the beneficial interest in such property are transferable or are not subject to a substantial risk of forfeiture, whichever occurs earlier, over (2) the amount (if any) paid for such property,
shall be included in the gross income of the person who performed such services in the first taxable year in which the rights of the person having the beneficial interest in such property are transferable or are not subject to a substantial risk of forfeiture, whichever is applicable. The preceding sentence shall not apply if such person sells or otherwise disposes of such property in an arm's length transaction before his rights in such property become transferable or not subject to a substantial risk of forfeiture. (b) Election To Include In Gross Income in Year of Transfer. -- (1) In General. -- Any person who performs services in connection with which property is transferred to any person may elect to include in his gross income, for the taxable year in which such property is transferred, the excess of -- (A) the fair market value of such property at the time of transfer (determined without regard to any restriction other than a restriction which by its terms will never lapse), over (B) the amount (if any) paid for such property. If such election is made, subsection (a) shall not apply with respect to the transfer of such property, and if such property is subsequently forfeited, no deduction shall be allowed in respect of such forfeiture. (2) Election. -- An election under paragraph (1) with respect to any transfer of property shall be made in such manner as the Secretary prescribes and shall be made not later than 30 days after the date of such transfer. Such election may not be revoked except with the consent of the Secretary.↩
4. Sec. 6653(a)(1)(A) was redesignated as sec. 6653(a)(1). Technical and Miscellaneous Revenue Act of 1988, Pub. L. 100-647, sec. 1015(b)(2)(A), 102 Stat. 3569.↩